UNITED STATES BANKRUPCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In re:

    PATRICK HACKETT HARDWARE,
    COMPANY, d/b/a
    WISEBUYS STORES, d/b/a
    HACKETTS
        Debtor.

Chapter 7

Case No. 09-63135

------------------------------------------------------------ x

True Value Company

        Plaintiff,

vs.

YA Global Investments, L.P.,

Wells Fargo Bank acting through its
Wells Fargo Business Credit operating division

Patrick Hackett Hardware Company, d/b/a
Wisebuys Stores, d/b/a Hacketts

Seaway Valley Capital Corporation

        Defendants.

Adv. NO. _____

## ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT

True Value Company ("True Value" or "Plaintiff"), by and through its attorney, David L. Ganje, Ganje Law Office, 2 Tower Place, alleges and states that:

1. This action is brought as an adversary proceeding under FRBP 7001(2) and 7001(9). Plaintiffs seek a judgment entered in its favor declaring Plaintiff the first prior lienholder and first and prior secured creditor against YA Global Investment, L.P to certain assets of the Debtor in Possession.

## Jurisdiction and Venue

2.  This Court has jurisdiction over this action pursuant to FRBP § 7001 and 11 USC § 105; and 28 U.S.C § 2201. This Court has subject matter jurisdiction under 28 U.S.C. § 1334(b); and 28 U.S.C. § 110. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction to entertain this Complaint pursuant to 28 U.S.C. §§157(a), 157(b)(2)(I) (core proceeding), and § 1334(b).

3.  Venue properly lies in this judicial district under 28 U.S.C 1408.

## Parties

4.  True Value is a corporation organized and existing under the law of the state of Delaware and maintains its principal place of business and business headquarters at 8600 W. Bryn Mawr Avenue, Chicago, Illinois 60631.

5.  Debtor Patrick Hackett Hardware Company (herein also "Debtor" or "Debtor In Possession") is in the retail sales business and is incorporated under the laws of the State of New York and maintains its principal corporate business offices in Gouverneur, New York.

6.  Seaway Valley Capital Corporation ("Seaway") is organized under the laws of the state of Delaware and maintains its principal place of business in Gouverneur, New York. Seaway is the ultimate parent company and controlling stockholder of Hackett.

7.  Yorkville Advisors, LLC ("YA Global") is a 'Cayman Islands exempt limited partnership' with its principal place of business located at 101 Hudson Street, Suite 3700, Jersey City, New Jersey.

## Relevant Background

8. On or about November 10, 2009 (the "Petition Date"), Patrick Hackett Hardware Company, d/b/a Wisebuys Stores, d/b/a Hacketts filed a petition under Chapter 11 of the United States Code (the "Code") with the United States Bankruptcy Court for the Northern District of New York, Utica Division (the "Court").

9. True Value is, and has been for over 50 years, the wholesaler for True Value® Stores. True Value ® stores retail members ("Members") each sign a Member Agreement with True Value in order to use the True Value® mark and to benefit from the group buying power, group billing procedures, and other benefits that True Value offers its members.

10. True Value is, and has always been, a cooperative that does not retain the yearly profits made from the sale of merchandise and services to its Members. Rather, True Value deducts the yearly operating expenses from such profits and distributes the remaining profits to its Members based on their margins of each year's purchases pursuant to Internal Revenue Code Section 1381, et seq.

11. On or about July 24, 2003, October 21, 2003, May 25, 2006, December 6, 2007, December 18, 2007 and May 8, 2008, respectively, Debtor entered into eight (8) separate Retail Member Agreements (individually, "Member Agreement" and collectively, "Member Agreements") with True Value. Attached hereto as Exhibit A is a true and correct copy of a sample Member Agreement.

12. In conjunction with the execution of the eight (8) Member Agreements, on or about July 24, 2003, October 21, 2003, May 25, 2006, December 6, 2007, December 18, 2007 and May 8, 2008, respectively, Debtor entered into Security Agreements ("Security Agreements") with True Value.

13. Pursuant to the terms of the Security Agreements, Debtor granted True Value a security interest in certain, specified Collateral including but not limited to inventory, receivables, furniture, fixtures, equipment, supplies and other tangible and intangible Collateral ("Collateral"), and was made, among others, "to secure (i) timely payment of all of Member's indebtedness to [True Value] for any and all Collateral sold, leased or consigned to Member by [True Value] or its subsidiaries...(vi) Members performance under its [Member Agreement] with [True Value] ... and (v) Members performance of its obligations under this Agreement. This Collateral is described in paragraphs #1 and #2 of the sample Security Agreement attached as Exhibit B. True Value holds a duly perfected first security interest in the Collateral pursuant to a filed financing statement with the New York State Department of State at file number 200308291536048 with a filing date thereof of August 29, 2003. The Filing Statement has been duly and timely continued by True Value. Attached hereto as Exhibit C is a true and correct copy of said Financing Statement.

14. The True Value Security Agreements identify, among others, the following events that constitute an event of default:

    (a) Member's default in the payment of any indebtedness to [True Value]...;

(f) Any default or breach by any Guarantor under its or his/her guaranty to [True Value]; and

(g) Any proceeding is commenced by or against Member or any Guarantor under any bankruptcy, reorganization, arrangement or readjustment of debtor or moratorium law or statute.

15. Pursuant to each of the eight Member Agreements, Debtor agreed to pay all invoices of True Value on or before the due date of said invoices and agreed to pay a service charge in the amount of 1-1/2% per month on past due balances.

16. Debtor further agreed, upon termination of membership, to pay immediately all amounts due, including any future dated invoices, from each Member to True Value and its subsidiaries.

17. Additionally, pursuant to the Member Agreements, Debtor agreed that, "in the event that [True Value] initiates proceedings to recover amounts due it by Member or for any breach of this Agreement or to seek equitable or injunctive relief against the Member, [True Value] shall be entitled to the recovery of all associated costs, interest and reasonable attorneys' fees."

18. In accordance with the Member Agreement, True Value provided various merchandise and services to Debtor.

19. Debtor received and accepted the merchandise and services provided by True Value.

20. In accordance with each of the eight (8) Member Agreements, True Value requested payment for the merchandise and services provided to Debtor.

21. Debtor has not, at any time, made complaints or objections to True Value regarding the merchandise and services provided by True Value.

22. At all times relevant hereto, True Value satisfied all of its obligations to Debtor pursuant to the Member Agreements and Security Agreements.

23. Despite repeated demands, Debtor have failed to pay the principal, interest, costs and fees to True Value. True Value filed a Proof of Claim in this case in the amount of $1,682,182.79. The Debtor has acknowledged this debt by the voluntary execution of a Confession of Judgment. Attached hereto as Exhibit D is a true and correct copy of the signed Confession of Judgment.

24. As a result of Debtor's failure to pay True Value for its merchandise and services, True Value has an unpaid claim, plus additional interest, costs and attorneys fees. True Value has also incurred costs and attorneys' fees in collecting the unpaid balance for which it is entitled to compensation.

25. There is an ongoing prejudice to the interests of True Value in that the Collateral and True Value's trademark rights have been materially reduced in value by the continuing sale to the public of True Value Collateral inventory. True Value has demanded an accounting of

sales, the Debtor has agreed per United States District Court Order to provide an accounting, but the Debtor refuses to provide an accounting of Collateral sales.

26. On or about January 30, 2009, True Value issued final demand letters to the Debtor due to the failure to pay the balance due to True Value and resultant breach of the Member Agreements.

27. True Value holds a perfected first priority security interest in the Collateral duly recorded and filed the 29th day of August 2003 and the continuation statement thereof duly filed the 25th day of August 2008.

28. The party Wells Fargo Bank was a previous secured creditor of the Debtor in Possession whose secured claim has been fully paid.

29. YA Global Investment, L.P.'s alleged interest exists by virtue of its previously purchased bank loan from Community Bank N.A. in which the Debtor In Possession was identified as the Borrower and Debtor. However, pursuant to an executed Exchange Agreement entered into on March 8, 2008 between YA Global Investment, L.P. and Seaway, any security interest in the Debtor's personal property under the previously purchased bank loan, if any, was retired and cancelled. In the third Whereas clause of the Exchange Agreement, (attached hereto as Exhibit E) the previous Community Bank N.A. loans were expressly converted into debentures.

30. The terms of Exhibit E reflect an exchange agreement and a substitution agreement. Further, it was expressly agreed under the Exchange Agreement that an immediate

cancellation of the old Community Bank N.A. loans was effectuated pursuant to paragraph 1(a): "Pursuant to the terms and conditions of this Agreement, contemporaneously with the execution and delivery of this Agreement, (i) the Buyer shall exchange the instruments evidencing the Loans for Debenture for no consideration. Upon surrender, the instruments evidence (sic) the Loans shall be retired by the Company and the outstanding balances shall hereinafter be evidenced by the Debenture." The debenture(s) were issued.

31. The Exchange Agreement was effectuated. There is an executed substitution agreement.

32. The previous Community Bank N.A. loans were cancelled. The closing under the Exchange Agreement has occurred. At the closing, YA was obligated to and immediately delivered for cancellation the Loans. See Exchange Agreement paragraph 8(a).

33. The investing and creditor public have also relied upon the Exchange Agreement's validity. Seaway and YA Global have received beneficial treatment from various regulatory authorities, investors and credit rating agencies based on the issuance of the Debenture and the elimination of a contingent liability from the books of Seaway.

34. Seaway's quarterly filing for the first quarter of 2008 explicitly states that, "In completing the Assignment Agreement, the Company entered into an exchange agreement (the "Exchange Agreement") *and agreed to exchange $2,249,073 in Community Bank debt for convertible debentures of the same value.*" (emphasis added). Seaway Valley Capital Corporation Form 10-Q Quarterly Filing, Dated March 31, 2008, filed May 20, 2008. pg.10-12.

Retrieved from SEC EDGAR database, December 30, 2009. This filing is a representation made by Seaway to the public which represents that the transaction between YA Global and Seaway was an Exchange of debt for a debenture.

## COUNT I

### Declaratory Relief Pursuant to FRBP § 7001(2) and (9) and 11 U.S.C. § 105

35. Plaintiff adopts and restates Paragraphs 1 through 34 of this Complaint as though fully set forth herein.

36. The Exchange Agreement is a substituted agreement which discharges the obligations due—the Loans—in exchange for the Seaway Debenture.

37. YA Global ceded its interest in the Loans, in that it delivered the Loan Papers to Seaway in exchange for the Debenture.

38. The intention of the parties in the Exchange Agreement was to convert YA Global's interest in the Community Bank, N.A. loans and security into the Seaway convertible Debenture and warrants.

39. Pursuant to the identified Security Agreements and financing statements as continued, Plaintiff holds a first position security interest in the Collateral identified in Exhibit B superior and prior to that of all other Defendants in this action.

WHEREFORE, pursuant to the Federal Declaratory Judgment ACT ('FDJA"), 28 U.S.C. §§2021-2202, as well as Federal Rule of Bankruptcy Procedure ("FRBP") 7001(2) and (9)

Plaintiff requests that a judgment be entered in its favor and against all of the above named Defendants which:

A. Grants a Declaratory Judgment that Plaintiff is the first lienholder and prior and first secured creditor in all of the Collateral of the Debtor In Possession identified in Exhibit B.

B. Grants a Declaratory Judgment that none of the Defendants herein have any rights or claims in the Collateral identified in Exhibit B superior to that of the Plaintiff.

C. Awards Plaintiff's reasonable attorneys' fees and the costs of this suit.

D. Grants any other equitable relief that is necessary or appropriate.

Date: 1/15/10

Respectfully submitted,

David L. Ganje, Esq.
Attorney for Plaintiff
Ganje Law Offices
Two Tower Place, Suite 4
Albany, New York 12203
Tel: (518) 437-9000
Fax: (518) 437-9115
E-Mail: d.ganje@ganjelaw.com