UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

In re:

PATRICK HACKETT HARDWARE
COMPANY, D/B/A WISEBUYS STORES,
D/B/A HACKETTS

     Debtor

Chapter 11
Case No. 09-63135-6-dd

## AMENDED PLAN OF REORGANIZATION

DATED: October 13, 2010

**Antonucci Law Firm LLP**
David P. Antonucci, of counsel
Bar Roll No: 101041
12 Public Square
Watertown, NY 13601
(315) 788-7300

COUNSEL TO PATRICK HACKETT
HARDWARE COMPANY

# TABLE OF CONTENTS

Page 1

ARTICLE I DEFINITIONS ...................................................................................................1

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS AND GENERAL
PROVISIONS ...................................................................................................................8

    2.1    Claims and Interests Classified.................................................................8
    2.2    Administrative Expense, Priority Tax, DIP and Fee Claims ...................9
    2.3    Classification of Claims and Interests.....................................................9

ARTICLE III CLASSIFICATION OF IMPAIRED  CLASSES OF CLAIMS AND
INTERESTS .....................................................................................................................9

    3.1    Unimpaired Classes of Claims and Interests ...........................................9
    3.2    Impaired Classes of Claims and Interests ................................................9

ARTICLE IV PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS ...................9

    4.1    Administrative Expense Claims................................................................9
    4.2    Fee Claims ...............................................................................................10
    4.3    Priority Tax Claims..................................................................................11

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS  CLASSIFIED IN THE
PLAN ...............................................................................................................................11

    5.1    Class 1:  Priority Non-Tax Claims.........................................................11
    5.2    Class 2:  Tax Municipalities Secured Claims. .......................................11
    5.3    Class 3: Other Secured Claims. ..............................................................12
    5.4    Class 4:  YA Global Secured Claim. ......................................................12
    5.5    Class 5: True Value Secured Claim. .......................................................13
    5.6    Class 6: KeyBank Secured Claim. ..........................................................14
    5.7    Class 7:  Unsecured Claims.   .................................................................14
    5.8    Class 8:  Interests ...................................................................................15

ARTICLE VI ACCEPTANCE OR REJECTION OF THE PLAN ...........................................16

    6.1    Each Impaired Class Entitled to Vote Separately ..................................16
    6.2    Acceptance by a Class of Claims............................................................16
    6.3    Presumed Rejection of the Plan and Cramdown.....................................16

ARTICLE VII DISTRIBUTIONS ..........................................................................................16

    7.1    Distributions............................................................................................16
    7.2    Disputed Claims......................................................................................16
    7.3    Unclaimed Property. ...............................................................................16
    7.4    Distributions to Holders of Claims Generally. .......................................17
    7.5    Setoffs. ....................................................................................................17
    7.6    Plan Expenses and Plan Expense Reserve. .............................................17

**TABLE OF CONTENTS**
**(continued)**

ARTICLE VIII MEANS FOR IMPLEMENTATION OF THE PLAN; EFFECTIVE DATE .................................................................................................................................18

    8.1    General Funding .................................................................................18
    8.2    New Value Contribution ....................................................................18
    8.3    Preservation of Assets and Claims ....................................................18
    8.4    Prosecution of Debtor's Claims Against Third Parties ......................18
    8.5    Section 506(a) Litigation. ..................................................................19
    8.6    Conditions Precedent to the Effective Date ......................................19
    8.7    Effect of Nonoccurrence of the Conditions to Consummation ...........19

ARTICLE IX EFFECT OF THE PLAN ON CLAIMS AND INTERESTS .................................19

    9.1    Release of Liens. ...............................................................................19
    9.2    Revesting and Vesting; Retention and Enforcement of Claims ...........20
    9.3    Satisfaction of Claims .......................................................................20

ARTICLE X EXECUTORY CONTRACTS .................................................................................20

    10.1    Executory Contracts ..........................................................................20
    10.2    Treatment of Rejection Damages Claims ...........................................21

ARTICLE XI ADMINISTRATIVE PROVISIONS .....................................................................21

    11.1    Retention of Jurisdiction ...................................................................21
    11.2    Failure of the Bankruptcy Court to Exercise Jurisdiction ..................23
    11.3    Governing Law ..................................................................................23
    11.4    Amendments. ....................................................................................23
    11.5    Modification, Revocation or Withdrawal of the Plan .........................24
    11.6    Exemption from Certain Transfer Taxes ............................................24
    11.7    Compromise of Controversies ...........................................................24
    11.8    Statutory Fees ...................................................................................24
    11.9    Insurance Preservation and Proceeds .................................................24
    11.10    Successors and Assigns ....................................................................25
    11.11    Confirmation Order and Plan Control ...............................................25
    11.12    Notices .............................................................................................25
    11.13    No Admissions ..................................................................................25

Patrick Hackett Hardware Company, the debtor and debtor in possession, hereby proposes the following plan of reorganization pursuant to the provisions of chapter 11 of title 11 of the Bankruptcy Code. All capitalized terms used in the Plan are either defined in section 101 of the Bankruptcy Code or in Article I below.

Briefly stated, but subject to the more specific details provided herein, the Plan provides for (a) the resolution of the Debtor's indebtedness to its two largest secured creditors to be resolved through a settlement agreement with the Debtor's direct and indirect corporate owners, among others, where the Debtor will not be obligated to make any direct payments to either creditor unless and until there is a default by such corporate owners and its guarantee is thereby triggered, (b) the payment of its remaining mortgage to KeyBank over 15 years at 6.50%, (c) the payment of a dividend to its general, unsecured creditors ranging from 5% to 10%, payable out of Eligible Net Profits with a dividend of a minimum of 5% and a maximum of up to 10% including an initial payment of $50,000 to be made upon the Effective Date (as defined below) and shared pro rata by such creditors , and (d) the retention by the Debtor's owners of their equity interests in the Debtor in exchange for a new value capital contribution of $500,000 to the Debtor.

## ARTICLE I

## DEFINITIONS

**A.** **DEFINED TERMS.** Unless otherwise provided in the Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code. For the purposes of the Plan, the following terms shall have the meanings set forth below:

**1.1** **Administrative Bar Date** means the deadline for filing notice of Administrative Expense Claims (other than Fee Claims) as set forth in Article 4.1(a) of the Plan.

**1.2** **Administrative Expense Claim** means any Claim, other than a Fee Claim, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without express or implied limitation: (a) any actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services rendered); (b) any Allowed Claims for reclamation of goods pursuant to section 546(c) of the Bankruptcy Code; and (c) any fees and charges assessed against the Estate pursuant to section 1930 of title 28 of the United States Code.

**1.3** **Adversary Proceeding** means that certain adversary complaint for declaratory judgment filed January 15, 2010 by True Value in the Bankruptcy Court and numbered 10-80004-6-dd, and the proceedings arising thereunder, which proceeding was dismissed without prejudice by order dated July 26, 2010.

**1.4** **Allowed Amount** means, with respect to any Claim in a particular Class under the Plan, the allowed amount of such Claim in such Class.

**1.5** **Allowed** means:

(a)     With respect to any Claim (other than an Administrative Expense Claim or a Fee Claim), either listed on the Schedules or proof of which was filed, (i) the amount set forth on the Schedules or in the proof of that claim if no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, (ii) the amount fixed by a Final Order of the Bankruptcy Court, if an objection is interposed to the Claim, or (iii) if such Claim is fixed or allowed in the Confirmation Order or other Final Order of the Bankruptcy Court (whether or not an objection is interposed to the Claim), the amount fixed or the Claim as allowed in such Order.

(b)     With respect to any Claim that is asserted to constitute an Administrative Expense Claim, notice of which was filed on or before the Administrative Bar Date, (i) the amount set forth in such notice if no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (ii) the amount fixed by a Final Order of the Bankruptcy Court if an objection is interposed to the Claim.

(c)     With respect to any Claim that is asserted to constitute a Fee Claim, with respect to which a Fee Application has been properly filed and served as provided in the Plan, such Claim to the extent it is allowed by a Final Order of the Bankruptcy Court.

**1.6     Allowed [Class Designation] Claim** means an Allowed Claim in the specified Class.  For example, an Allowed Class 7 Claim or Allowed Unsecured Claim is an Allowed Claim in the Unsecured Claims Class designated herein as Class 7.

**1.7     Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, §§ 101 et seq.

**1.8     Bankruptcy Court** means the United States District Court for the Northern District of New York, having jurisdiction over the Chapter 11 Case, whether acting through its Bankruptcy Court unit or otherwise.

**1.9     Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Case, including the Local Rules of the Bankruptcy Court.

**1.10     Bar Date** means the applicable date by which a proof of claim (for claims other than Administrative Expense Claims or Fee Claims) must be filed against the Debtor with the Clerk of the Bankruptcy Court.

**1.11     Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.12     Cash** means cash and cash equivalents, including but not limited to bank deposits, checks, and other similar items.

**1.13     Causes of Action** means (i) causes of action of the Debtor pursuant to sections 502, 505, 542, 543, 544, 545, 546, 550 and 553 of the Bankruptcy Code; (ii) preference

causes of action of the Debtor pursuant to section 547 of the Bankruptcy Code; (iii) fraudulent transfer causes of action of the Debtor pursuant to section 548 or 544(b) of the Bankruptcy Code; (iv) causes of action of the Debtor relating to post-petition transactions pursuant to section 549 of the Bankruptcy Code; and (v) all causes of actions against the Debtor, its agents and other insiders, including claims for breach of fiduciary duty, mismanagement, preferences and fraudulent conveyances; and (vi) any and all other causes of action of the Debtor against third parties, which causes of action exist as of the Effective Date, whether or not those causes of action arose before or after the Commencement Date.

   **1.14** **Chapter 11 Case** means the chapter 11 case of the Debtor pending before the Bankruptcy Court and docketed as Case No. 09-63135.

   **1.15** **Claim** means a "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtor, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, including claims arising from the rejection of executory contracts, and any contingent claim.

   **1.16** **Class** means any group of Claims or Interests classified by the Plan, and described in Article II of the Plan, pursuant to section 1122(a) of the Bankruptcy Code.

   **1.17** **Commencement Date** means November 10, 2009, the date on which the petition commencing the Chapter 11 Case was filed with the Bankruptcy Court.

   **1.18** **Confirmation Date** means the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

   **1.19** **Confirmation Hearing** means the hearing pursuant to which the Bankruptcy Court considers confirmation of the Plan.

   **1.20** **Confirmation Order** means the order or orders of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

   **1.21** **Court Determined Rate** shall mean that interest rate applicable to a Claim that must be paid at interest under the Plan after the Effective Date as shall be determined by the Bankruptcy Court as a matter of law pursuant to section 1129 of the Bankruptcy Code.

   **1.22** **Creditor** means any Person or entity having a Claim against the Debtor, including, but not limited to, Administrative Expense Claims, Priority Tax Claims, Fee Claims, Priority Non-Tax Claims, the YA Global Secured Claim, the True Value Secured Claim, the KeyBank Secured Claim, Other Secured Claims, and Unsecured Claims.

   **1.23** **Debtor** means Patrick Hackett Hardware Company, d/b/a Wisebuys Stores, d/b/a Hacketts, a New York corporation and the debtor in possession in the Chapter 11 Case.

**1.24    Disallowed Claim** means a Claim or that portion thereof that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

**1.25    Disclosure Statement** means the Disclosure Statement that relates to the Plan and has been approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.26    Disputed Claim** means that portion (including, when appropriate, the whole) of a Claim that is neither an Allowed Claim nor a Disallowed Claim.

**1.27    Distribution** means the payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims.

**1.28    Distribution Address** means, for each Creditor, its address set forth in its proof of claim or, if no proof of claim is filed in respect to a particular Claim, its address set forth in the Schedules.

**1.29    Distribution Date** means that date that is, for any Creditor, the date that is the later of (a) the date set forth in the respective provision of the Plan or (b) the date on which the Creditor's Claim becomes Allowed.

**1.30    Effective Date** means the date which is fifteen (15) days after the Confirmation Date, or, if that date is not a Business Day, the next succeeding Business Day, provided, however, that if, on or prior to such date, all conditions to the Effective Date set forth in Article 8.6 of the Plan have not been satisfied, or waived, then the Effective Date shall be the first Business Day following the day on which all such conditions have been satisfied or waived.

**1.31    Eligible Net Profits** means, in respect to any one fiscal year, fifty (50%) per cent of the pre-tax profits net of accrued and unpaid interest on the YA and True Value Allowed Claims and exclusive of extraordinary items, realized by the reorganized Debtor, when calculated by an independent certified public accountant in accordance with generally acceptable accounting principles.

**1.32    Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.33    Estate Assets** means all property of the Debtor, as defined in section 541 of the Bankruptcy Code, including the Properties and the Causes of Action (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date or thereafter arising, including, without limitation, any executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court or the Plan, and all proceeds of the foregoing, and including any rights of the Debtor pursuant to section 505 of the Code.  Upon the sale of any Estate Assets, the sold assets will cease to be Estate Assets.

**1.34     Fee Application** means an application for payment of a Fee Claim that conforms with the requirements of the Plan, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and any applicable orders of the Bankruptcy Court.

**1.35     Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to section 327, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5) or 1103 of the Bankruptcy Code in connection with the Chapter 11 Case.

**1.36     Final Order** means an order as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor, and its counsel or, in the event that an appeal, writ of *certiorari*, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired.

**1.37     Final Settlement Agreement** means that "Final Settlement Agreement" as is identified and described in Articles 5.4(a) and 5.5(a) of the Plan

**1.38     Interest** means any stock ownership interest or equity stake in the Debtor, including any "equity security" within the meaning of section 101(16) of the Bankruptcy Code and rights of conversion of debt to equity.

**1.39     KeyBank** means KeyBank National Association, a successor in interest to Key Bank of New York, a secured creditor of the Debtor, having a usual place of business in Albany, NY.

**1.40     KeyBank Secured Claim** means the Claim or Claims of KeyBank arising under the KeyBank Loan Documentation.

**1.41     KeyBank Loan Documentation** means that certain loan arrangement evidenced by, among other things, (i) that certain Promissory Note, dated June 11, 1998, issued by the Debtor in favor True Value, and (ii) a certain Mortgage and Security Agreement, and an Assignment of Rents and Leases, of the same date, executed by the Debtor in favor of KeyBank, as each may have been amended, modified or restated from time to time.

**1.42     New Value Contribution** means the amount paid by the New Value Contributors for all of the equity interests in the reorganized Debtor. Such amount shall not be less than Five hundred Thousand ($500,000.00) dollars, but could be more depending on the outcome of the bidding for the Debtor's equity, if any, pursuant to the Plan.

**1.43     New Value Contributors** means a Person or Persons who, pursuant to the terms of the Plan, purchase(s) all of the equity interests in the reorganized Debtor and thereby succeed to the full ownership thereof. Except to the extent that the Bankruptcy Court is advised otherwise in writing, the New Value Contributors shall consist of Seaway and/or Wisebuys, with

the respective scope of their Interests, if they both are Contributors, being in such amounts as they shall determine.

      **1.44    Notice** means any form of written notice to the designated recipient, whether by mail, email, facsimile, hand delivery or otherwise, the date of such notice being the date the form of notice was actually made by the party giving notice (by way of example, the date notice was mailed, postage prepaid, to the recipient).

      **1.45    Other Secured Claims** means a Secured Claim, other than the YA Global Secured Claim, the True Value Secured Claim, the KeyBank Secured Claim or the Tax Municipalities Secured Claims, that is secured by a lien on Estate Assets.

      **1.46    Other Secured Claims Loan Documentation** means that certain loan arrangement, as applicable to a given holder of an Other Secured Claim, evidenced by, among other things, those instruments evidencing a loan or other extension of credit and any and all security agreements and/or mortgages, or the like, securing the same.

      **1.47    Person** means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holders, current or former employees of the Debtor or any other entity.

      **1.48    Plan** means this Amended Plan of Reorganization as it may be further amended or modified.

      **1.49    Priority Non-Tax Claim** means any Claim, to the extent Allowed, entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Expense Claim; (b) a Fee Claim; or (c) a Priority Tax Claim.

      **1.50    Priority Tax Claim** means an unsecured Claim, to the extent Allowed, entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

      **1.51    Properties** means that certain real property or properties owned of record by the Debtor and in respect to which the Debtor is responsible for real estate taxes and other municipal charges.

      **1.52    Seaway** means Seaway Valley Capital Corporation, a publicly traded Delaware corporation which, among other things, is the parent company of Wisebuys and indirectly the sole shareholder of the Debtor, having a usual place of business in Sackets Harbor, NY.

      **1.53    Schedules** means the schedule of assets and liabilities and the statements of financial affairs filed with the Bankruptcy Court, pursuant to sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code, as such schedules and statements have been or may be amended from time to time.

      **1.54    Secured Claim** means, pursuant to section 506 of the Bankruptcy Code or otherwise, that portion of a Claim that is (a) secured by a valid, perfected and enforceable

security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any interest of the Debtor in and to property of the Estate, to the extent of the value of the holder's interest in such property or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).

     **1.55**   **Tax Municipalities** means the cities, towns or municipalities in which the Properties are located to the extent of their Claims for unpaid real estate taxes.

     **1.56**   **Tax Municipalities Secured Claims** means the Claims of the Tax Municipalities arising from unpaid real estate taxes due and payable as of the Effective Date, whether or not the Tax Municipality has filed a proof of claim or has filed a proof of claim that is identified as unsecured.

     **1.57**   **Term Sheet** means that certain Term Sheet by and among the Debtor, Seaway, True Value, YA Global, Patrick Hackett, Jr., Norman V. Garrelts and Juliann Hackett Cliff attached to the Plan as Exhibit "A."

     **1.58**   **True Value** means True Value Company, a secured creditor of the Debtor, having a usual place of business in Chicago, IL.

     **1.59**   **True Value Secured Claim** means the Claim or Claims of True Value arising under the True Value Loan Documentation.

     **1.60**   **True Value Loan Documentation** means that certain credit arrangement evidenced by, among other things, (i) those certain eight (8) separate Retail Member Agreements dated on or about July 24, 2003, October 21, 2003, May 25, 2006, December 6, 2007, December 18, 2007 and May 8, 2008 (the "Member Agreements") and (ii) a certain Security Agreement or Agreements entered into in connection with the Member Agreements, executed by the Debtor in favor of True Value, as each may have been amended, modified or restated from time to time, and including that certain Confession of Judgment in connection therewith.

     **1.61**   **Unclaimed Property** means any Cash or other property unclaimed on or after the Effective Date or date on which a Distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available.

     **1.62**   **Unsecured Claim** means any Claim other than an Administrative Expense Claim, a Fee Claim, a Priority Non-Tax Claim, a Priority Tax Claim, or a Secured Claim.

     **1.63**   **U.S. Trustee** means the Office of the United States Trustee for the Northern District of New York.

**1.64    Wisebuys** means Wisebuys, Inc. f/k/a Hackett's Stores, Inc., a holding of Seaway and the sole shareholder of the Debtor, having a usual place of business in Sackets Harbor, NY.

**1.65    YA Global** means YA Global Investments, L.P., for itself and as a successor in interest to Community Bank, N.A., a secured creditor of the Debtor having a usual place of business in Jersey City, NJ.

**1.66    YA Global Secured Claim** means the Claim or Claims of YA Global arising under the YA Global Loan Documentation.

**1.67    YA Global Loan Documentation** means that certain loan arrangement evidenced by, among other things, (i) that certain Commercial Security Agreement dated April 5, 2006 executed by the Debtor in favor of Community Bank, N.A. and assigned to YA Global; (ii) that certain Guaranty dated November 30, 2007 executed by the Debtor in favor of YA Global; (iii) that certain Security Agreement dated November 30, 2007 executed by the Debtor in favor of YA Global; (iv) that certain Exchange Agreement dated as of March 4, 2008 executed by the Debtor in favor of YA Global;  and (v) that certain Letter Agreement dated August 14, 2009 by and among the Debtor and YA Global among others, as each may have been amended, modified or restated from time to time.

**B.    Miscellaneous Rules of Construction.** (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; (iii) captions and headings to articles and sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (v) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date; (vi) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (vii) whenever the Plan provides that a payment or other Distribution shall occur "on" any date, it shall mean "on or as soon as reasonably practicable after" such date, and (viii) an initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

## ARTICLE II

## CLASSIFICATION OF CLAIMS
## AND INTERESTS AND GENERAL PROVISIONS

**2.1    Claims and Interests Classified.**  For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except

8

Administrative Expense Claims, Priority Tax Claims and Fee Claims) and all Interests shall be classified as set forth in this Article II of the Plan.

**2.2    Administrative Expense, Priority Tax, DIP and Fee Claims.** As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Fee Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to Article IV of the Plan.

**2.3    Classification of Claims and Interests.** The Plan classifies the Claims against and Interests in the Debtor as follows:

> (a)    **Class 1:** Priority Non-Tax Claims
>
> (b)    **Class 2:** Tax Municipalities Secured Claims
>
> (c)    **Class 3:** Other Secured Claims
>
> (d)    **Class 4:** YA Global Secured Claim
>
> (e)    **Class 5:** True Value Secured Claim
>
> (f)    **Class 6:** KeyBank Secured Claim
>
> (g)    **Class 7:** Unsecured Claims
>
> (h)    **Class 8:** Interests

## ARTICLE III

## CLASSIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND INTERESTS

**3.1    Unimpaired Classes of Claims and Interests.** Claims in Class 1 are not impaired under the Plan.[1]

**3.2    Impaired Classes of Claims and Interests.** With the exception of the unimpaired Classes specified in Article 3.1 of the Plan, all Classes of Claims are impaired under the Plan.

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS

**4.1    Administrative Expense Claims** All Administrative Expense Claims shall be treated as follows:

---

[1] In the unanticipated event that the Debtor does not have sufficient Cash on hand to pay all Allowed Class 3 Claims in full on the Effective Date, then any Allowed Class 3 Claim that is not paid on the Effective Date shall be considered impaired.

(a) **Time for Filing Administrative Expense Claims.** The holder of an Administrative Expense Claim must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Expense Claim within sixty (60) days after Notice is given to such a putative holder by the Debtor following the Confirmation Date. Such notice must include, at a minimum, (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to file and serve this notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged, provided, however, that all Tax Municipalities shall be paid in respect to Tax Municipalities Secured Claims pursuant to Article 5.2 of the Plan.

(b) **Allowance of Administrative Expense Claims.** An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Article 4.1(a) of the Plan shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days of the filing and service of notice of such Administrative Expense Claim. If an objection is filed within such sixty (60) day period, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order of the Bankruptcy Court.

(c) **Payment of Allowed Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim by the passage of time or by Final Order of the Bankruptcy Court, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; *provided however*, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business by the Debtor during the Chapter 11 Case shall be paid in the ordinary course of business by the Debtor in accordance with the terms and conditions of any agreements, express or implied, relating thereto.

    **4.2**   **Fee Claims**   All Fee Claims shall be treated as follows:

(a) **Time for Filing Fee Claims.** Each professional Person who holds or asserts a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive notice a Fee Application within sixty (60) days after the Confirmation Date. The failure to file and serve the Fee Application timely and properly shall result in the Fee Claim being forever barred and discharged. To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered Order of the Bankruptcy Court regarding procedures for the payment of Fee Claims.

(b) **Allowance of Fee Claims.** A Fee Claim, with respect to which a Fee Application has been properly filed and served pursuant to Article 4.2(a) of the Plan, shall become an Allowed Fee Claim only to the extent allowed by Final Order of the Bankruptcy Court.

(c) **Payment of Allowed Fee Claims.** Each holder of an Allowed Fee Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Fee Claim becomes an Allowed Fee

Claim by the passage of time or by Final Order of the Bankruptcy Court, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder.

   **4.3** **Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim, to the extent that it is not a Tax Municipality whose treatment is described in <u>Article 5.2</u> of the Plan, shall receive, at the sole option of the Debtor, (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Priority Tax Claim is Allowed; (ii) the amount of such holder's Allowed Claim plus interest thereon at the rate applicable under non-bankruptcy law in equal annual cash payments of principal plus interest thereon on each anniversary of the Effective Date, until the fifth anniversary of the Effective Date (but provided, however, that the last payment shall not be later than the fifth anniversary of the Commencement Date); or (iii) such other treatment as may be agreed upon in writing by the Debtor and such holder. Notwithstanding the foregoing, the Debtor may pre-pay such a Claim at any time.

## ARTICLE V

## PROVISIONS FOR TREATMENT OF CLAIMS
## CLASSIFIED IN THE PLAN

### 5.1 Class 1: Priority Non-Tax Claims.

   (a) *Treatment*:  Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of such Claim in full in Cash on the later of (i) the Effective Date, or (ii) as soon as practicable after the date such Claim is Allowed by a Final Order of the Bankruptcy Court. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

   (b) *Status*:  Class 1 is not impaired under the Plan.  The holders of the Claims in Class 1 are deemed to accept the Plan and are, accordingly, not entitled to vote on the Plan.

### 5.2 Class 2: Tax Municipalities Secured Claims.

   (a) *Treatment*:  Each holder of an Allowed Tax Municipalities Secured Claim shall receive, at the sole option of the Debtor, (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Tax Municipalities Secured Claim is Allowed; (ii) the amount of such holder's Allowed Claim plus interest thereon at the applicable non-bankruptcy rate in equal annual cash payments of principal plus interest thereon on each anniversary of the Effective Date, until the fourth anniversary of the Effective Date (but provided, however, that the last payment shall not be later than the fifth anniversary of the Commencement Date); or (iii) such other treatment as may be agreed upon in writing by the Debtor and such holder. Notwithstanding the foregoing, the Debtor may pre-pay such a Claim at any time.

   (b) *Status*:  Class 2 is impaired under the Plan.  The holders of the Claims in Class 2 are, accordingly, entitled to vote on the Plan.

### 5.3 Class 3: Other Secured Claims.

(a) *Treatment*: The holders of the Allowed Other Secured Claims, if any, shall be paid the Allowed Amount of such Claim over fifteen (15) years, from month to month, from the Confirmation Date on a direct reduction, even amortization basis, inclusive of interest which shall accrue thereon at either (i) the rate of 6.5% per annum or (ii) if the holder of such claim objects to confirmation of the Plan on the basis of such rate, the Court Determined Rate. Notwithstanding the foregoing, the holder of the Allowed Other Secured Claims may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(b) Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the Other Secured Claims Loan Documentation shall remain in full force and effect and any and all liens and security interests held by holders of Class 3 Claims as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(c) The Debtor reserves the right to file pleadings pursuant to section 506(a) of the Bankruptcy Code or otherwise to determine whether or not any portion of the Claim in this Class shall be deemed to be unsecured. In the absence of filing such a pleading by the Effective Date, the entirety of the respective Other Secured Claim shall be deemed to be Secured.

(d) *Status*: Class 3 is impaired, unless the Debtor elects to pay the holder of a Claim in this class in full under the first option above. The holders of Claims in Class 3, unless unimpaired, are, accordingly, entitled to vote on the Plan.

### 5.4 Class 4: YA Global Secured Claim.

(a) *Treatment*: The holder of the Allowed YA Global Secured Claim shall be paid and treated on a basis materially consistent with the Term Sheet attached hereto and to be memorialized in a final written agreement (the "Final Settlement Agreement") among, and executed by, at least the parties thereto. Specifically, but without limitation, the YA Global Allowed Secured Claim shall be in the amount of its Allowed Claim, the Debtor acknowledges its obligation for the Allowed YA Global Secured Claim and the absence of any defense, offset, or reduction to such Claim, such Claim shall continue to be secured to the extent it was on the Commencement Date, such Claim shall be entitled to include reasonable legal fees and expenses of YA Global's attorneys, and YA Global shall not seek payment of its Claim from the Debtor prior to the existence of a default under the Final Settlement Agreement. YA Global shall not share in any distribution to Class 7 Creditors under the Plan.

(b) The Debtor shall file a copy of the Final Settlement Agreement in the Bankruptcy Court not later than ten (10) days prior to the commencement of the Confirmation Hearing, provided, however, that the Debtor reserves the right to request of the Bankruptcy Court additional time to file such agreement if circumstances so warrant. Holders of Claims or Interests may obtain a copy of such document upon written request to the Debtor in accordance with Article 11.12 of the Plan.

(c)     Except as expressly stated herein, the controversies identified in the Adversary Proceeding relating to the priority of the secured position of YA Global relative to True Value and any other secured parties shall be expressly reserved and shall not be resolved in the Plan. The Debtor acknowledges that in the event of a default under the Final Settlement Agreement, either YA Global or True Value may initiate litigation in a court of competent jurisdiction to resolve such controversies, although nothing herein shall be deemed to compel such litigation as a means of dispute resolution between the two parties.

(d)     Notwithstanding the foregoing, the holder of the Allowed YA Global Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(e)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the YA Global Loan Documentation shall remain in full force and effect and any and all liens, mortgages, and security interests held by YA Global as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(f)     *Status:* Class 4 is impaired. The holder of the Claim in Class 4 is, accordingly, entitled to vote on the Plan.

### 5.5     Class 5: True Value Secured Claim.

(a)     *Treatment:* The holder of the Allowed True Value Secured Claim shall be paid and treated on a basis materially consistent with the Term Sheet attached hereto and to be memorialized in a final written agreement (the "Final Settlement Agreement") among, and executed by, at least the parties thereto. Specifically, but without limitation, the True Value Allowed Secured Claim shall be in the amount of its Allowed Claim, the Debtor acknowledges its obligation for the Allowed True Value Secured Claim and the absence of any defense, offset, or reduction to such Claim, such Claim shall continue to be secured to the extent it was on the Commencement Date, such Claim shall be entitled to include reasonable legal fees and expenses of True Value's attorneys, and True Value shall not seek payment of its Claim from the Debtor prior to the existence of a default under the Final Settlement Agreement. True Value shall not share in any distribution to Class 7 Creditors under the Plan.

(b)     The Debtor shall file a copy of the Final Settlement Agreement in the Bankruptcy Court not later than ten (10) days prior to the commencement of the Confirmation Hearing, provided, however, that the Debtor reserves the right to request of the Bankruptcy Court additional time to file such agreement if circumstances so warrant. Holders of Claims or Interests may obtain a copy of such document upon written request to the Debtor in accordance with Article 11.12 of the Plan

(c)     Except as expressly stated herein, the controversies identified in the Adversary Proceeding relating to the priority of the secured position of YA Global relative to True Value and any other secured parties shall be expressly reserved and shall not be resolved in the Plan. The Debtor acknowledges that in the event of a default under the Final Settlement Agreement, either YA Global or True Value may initiate litigation in a court of competent

13

jurisdiction to resolve such controversies, although nothing herein shall be deemed to compel such litigation as a means of dispute resolution between the two parties.

(d)     Notwithstanding the foregoing, the holder of the Allowed True Value Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(e)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the True Value Loan Documentation shall remain in full force and effect and any and all liens, mortgages, and security interests held by True Value as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(f)     *Status*: Class 5 is impaired. The holder of the Claim in Class 5 is, accordingly, entitled to vote on the Plan.

### 5.6     Class 6: KeyBank Secured Claim.

(a)     *Treatment*: The holder of the Allowed KeyBank Secured Claim shall be paid the Allowed Amount of such Claim over fifteen (15) years, from month to month, from the Confirmation Date on a direct reduction, even amortization basis, inclusive of interest which shall accrue thereon at either (i) the rate of 6.5% per annum or (ii) if the holder of such claim objects to confirmation of the Plan on the basis of such rate, the Court Determined Rate. Notwithstanding the foregoing, the holder of the Allowed KeyBank Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(b)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the KeyBank Loan Documentation shall remain in full force and effect and any and all liens and security interests held by KeyBank as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(c)     The Debtor reserves the right to file pleadings pursuant to section 506(a) of the Bankruptcy Code or otherwise to determine whether or not any portion of the Claim in this Class shall be deemed to be unsecured. In the absence of filing such a pleading by the Effective Date, the entirety of the KeyBank Claim shall be deemed to be Secured.

(d)     *Status*: Class 6 is impaired. The holder of the Claim in Class 6 is, accordingly, entitled to vote on the Plan.

### 5.7     Class 7: Unsecured Claims.

(a)     *Treatment*: Each holder of an Allowed Unsecured Claim shall be paid in full and final satisfaction thereof a minimum total cash payment of five (5%) per cent (the "Minimum Payment") of the Allowed Claim and a maximum total cash payment of ten (10%) per cent of the Allowed Claim, payable as follows:

    (1)  Each such holder shall share pro rata with each other holder of Allowed Class 7 Claims in $50,000 to be paid by the Debtor on the Effective Date;

    (2)  Each such holder shall share pro rata with each other holder of Allowed Class 7 Claims in the Eligible Net Profits calculated annually in respect to the first ten (10) fiscal years of the reorganized Debtor following the Effective Date.

    (3)  The determination of Eligible Net Profits and the payments required by this section of the Plan shall be made annually no later than one hundred and twenty (120) days following the close of the respective fiscal year.

    (4)  To the extent that, following payment, if at all, of Eligible Net Profits through and including the end of the tenth such fiscal year as calculated above, the reorganized Debtor has not paid the Minimum Payment identified above, each such holder shall immediately be paid in cash a sum equal to the difference between the Minimum Payment due such holder and the total amount received by such holder to date.

    (5)  Notwithstanding anything to the contrary in Section 5.7(a) of the Plan, no payments shall be made by the reorganized Debtor to Class 7 Creditors under the Plan in the event of a default under the Final Settlement Agreement

  (b)  No Distributions of less than twenty ($20.00) dollars shall be made by the Debtor to the holder of any Allowed Claim in Class 7 unless a request therefor is made in writing to the Debtor. If no request is made as provided in the preceding sentence, all such Distributions shall be held and shall be distributed to the remaining, eligible holders of Allowed Class 7 Claims, as part of the Distribution being made at the time in accordance with the terms of the Plan.

  (c)  *Status*: Class 7 is impaired under the Plan. The holders of the Claims in Class 7 are, accordingly, entitled to vote on the Plan.

### 5.8 Class 8: Interests

  (a)  *Treatment*: Holders of Interests in the Debtor shall not receive any distribution concerning, nor retain any of their Interests in, the Debtor on account of their Interests as of the Commencement Date. All Interests in the Debtor shall be cancelled on the Effective Date.

  (b)  *Status*: The Interests in Class 8 are impaired under the Plan. The holders of Interests in Class 8 are presumed to reject the Plan and are not entitled to vote on the Plan.

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1**     **Each Impaired Class Entitled to Vote Separately.**  Each Impaired Class of Claims that is to receive a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each Creditor in an Impaired Class of Claims shall receive a Ballot which will be used to cast its vote in respect to the Plan.

**6.2**     **Acceptance by a Class of Claims.**  A Class of impaired Claims shall have accepted the Plan if the Plan is accepted by holders of Claims that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims of such Class that have voted to accept or reject the Plan.

**6.3**     **Presumed Rejection of the Plan and Cramdown.**  The Debtor shall utilize the provisions of section 1129(b) of the Bankruptcy Code to satisfy the requirements of confirmation of the Plan over the rejection of the Plan, if at all, by any Class entitled to vote on the Plan.

# ARTICLE VII

## DISTRIBUTIONS

**7.1**     **Distributions**  The Debtor shall be responsible for making Distributions to holders of Allowed Claims pursuant to Article V of the Plan.  The Debtor shall only be required to make Distributions on a Distribution Date.

**7.2**     **Disputed Claims**  In making Distributions, the Debtor shall reserve an amount sufficient to make a Distribution based on the filed amount of the Disputed Claims unless otherwise ordered by the Bankruptcy Court.  The Debtor shall reserve such amount until such time as any such Disputed Claim becomes an Allowed Claim or is disallowed.  Once a Claim becomes an Allowed Claim in whole, or in part, the Cash then due to the holder of the Allowed Claim shall be distributed to the claimant on the next Distribution Date.  To the extent a Claim is allowed in an amount less than the amount that had been reserved, the unused portion shall no longer be reserved.

**7.3**     **Unclaimed Property.**

(a)     **Escrow of Unclaimed Property.**  The Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.

(b)     **Distribution of Unclaimed Property.**  Notwithstanding Article 7.3(a) of the Plan, at the end of one hundred twenty (120) days following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims theretofore entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, whereupon (i) all right, title and interest in and to such property shall immediately and irrevocably revest in the Debtor, (ii) such holders shall cease to be entitled

thereto, and (iii) any such Unclaimed Property shall be, among other things, subject to Distribution by the Debtor to any Allowed Claims that remain unpaid, either in whole or in part, in accordance with Article V of the Plan.

### 7.4    Distributions to Holders of Claims Generally.

(a)    **No Distribution in Excess of Allowed Amount of Claim.** Except as expressly provided for in the Plan or by operation of law under the Bankruptcy Code, (i) no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed Amount of such Claim and (ii) no Claim shall be Allowed to the extent that it is for post-petition or post-Effective Date interest.

(b)    **Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(c)    **Withholding Taxes.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

(d)    **Timing of Distributions Under the Plan.** Payments and Distributions in respect of Allowed Claims under the Plan shall be made as mandated under the Plan.

(e)    **Manner of Payments.** Any payments to be made by the Debtor pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtor or its professionals (or by wire transfer if circumstances justify), at the option of the Debtor.

### 7.5    Setoffs.    Except as otherwise provided in the Plan, the Confirmation Order, or in agreements approved by Final Order of the Bankruptcy Court, the Debtor may, pursuant to applicable law (including section 553 of the Bankruptcy Code), offset against any Distribution amount related to any Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such, *provided, however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of the Plan shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder. To the extent the Debtor fails to set off against a Creditor and seeks to collect a claim from such Creditor after a Distribution to such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery on the claim against such Creditor.

### 7.6    Plan Expenses and Plan Expense Reserve.

All costs, expenses and obligations incurred by the Debtor in administering the Estate Assets or in any manner connected, incidental or related thereto, including but not limited to the fees and expenses of professionals retained by the Debtor and their respective

professionals to assist in carrying out their post-confirmation duties pursuant to the Plan, post-confirmation U.S. Trustee's fees, and fees and expenses of the Debtor and their respective professionals in pursuing ongoing litigation, shall be a charge against the Estate Assets, and the Debtor shall pay the same, maintaining at all times adequate reserves for such payments prior to making Distributions to the Creditors, all subject to any agreement in respect thereto between the Debtor and the party involved.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN; EFFECTIVE DATE

**8.1** **General Funding**. Subsequent to the Effective Date, the Debtor shall operate its business and, without the obligation to do so, take any and all prudent steps to provide for the payment of Creditors under the Plan, including, without limitation, the following: (a) selling all or some of the Properties, including hiring real estate brokers or similar professionals to dispose of Estate Assets in such a way, and at such a price, as to enable the Debtor to realize fair market value therefor and to pay any Secured Debt thereon; (b) refinancing any of the loans to holders of Secured Debt, thereby enabling such holders to be paid in full and, as appropriate enabling the Debtor to pay Unsecured Claims; and (c) entering into partnership or joint venture agreements to maximize the value of Estate Assets, and, to the extent possible, to pay off or pay down any Secured Debt relating to the subject of such a partnership or joint venture.

**8.2** **New Value Contribution.** On or before the Effective Date, the New Value Contributors shall make the New Value Contribution in exchange for 100% of the Interests in the reorganized Debtor. The New Value Contributors shall be those Persons described in the definition Article of the Plan unless, prior to the Confirmation Hearing, written notice is received by the Debtor's counsel appearing on the face sheet of the Plan that another party or parties desires to bid for the Interests in the reorganized Debtor accompanied by a cashier's or certified check, payable to the Debtor, in the sum of the bid. In such event, the Debtor will seek authorization from the Bankruptcy Court to set up an expedited process for accepting bids and selecting a winning bid for the Interests in the reorganized Debtor.

**8.3** **Preservation of Assets and Claims.** All right, title and interest in and to the Estate Assets shall remain with the Debtor.

## 8.4 Liquidation of Assets out of the Ordinary Course.

Irrespective of the pendency of any complaint or motion to do so prior to the Confirmation Date, on and after the Confirmation Date the Debtor shall not sell or otherwise attempt to dispose of any Estate Assets out of the ordinary course of business that constitute collateral of YA Global or True Value unless the respective lienholder or lienholders consent in writing and receive the proceeds of such sale net of the direct expenses of the sale but without further application of section 506(c) of the Bankruptcy Code, which net proceeds shall be applied by them to their respective indebtedness.

**8.5** **Prosecution of Debtor's Claims Against Third Parties.** The Debtor may file adversary complaints to pursue avoidance claims and any other Causes of Action

against Creditors of the Debtor and against other third parties to the extent not settled or resolved prior to the Confirmation Date or in accordance with the Plan, provided, however, that the Debtor shall not file any such complaints or other Causes of Action against YA Global or True Value, and acknowledges that no such claims or causes of action exist.

### 8.6    Section 506(a) Litigation.

As necessary, but subject to the Plan, the Debtor shall initiate pleadings pursuant to section 506(a) of the Bankruptcy Code to determine to what extent, if at all, an Allowed Claim of a Creditor is secured by property of the Debtor or is otherwise to be treated solely as an unsecured Claim in this case.

**8.7    Conditions Precedent to the Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

(a)    All payments to be made on or before the Effective Date by the Debtor shall be made or duly provided for.

(b)    The New Value Contributors shall have made the New Value Contribution to the Debtor.

(c)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance consistent with the Plan, which Confirmation Order shall be acceptable to the Debtor, and shall have become a Final Order.

(d)    The Final Settlement Agreement (i) shall have been prepared and executed by all parties to the Term Sheet and any others appearing on the Final Settlement Agreement, and (ii) any and all actions required or contemplated by the Final Settlement Agreement shall have been taken by each of the parties responsible for so doing.

**8.8    Effect of Nonoccurrence of the Conditions to Consummation.** If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date that is 90 days after the Confirmation Date, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor or (b) prejudice in any manner the rights of the Debtor.

### ARTICLE IX

### EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 9.1    Release of Liens.

(a)    **Release of Liens.**  Unless expressly provided for or contemplated through the execution of other documents to the contrary in the Plan: (i) each holder of a Secured Claim or a Claim that is purportedly secured shall, on or immediately before the Effective Date: (A) turn over and release to the Debtor any and all property of the Debtor or the Estate that

secures or purportedly secures such Claim; and (B) execute such documents and instruments as the Debtor reasonably requires to evidence, or record with respect to any liens or security interests recorded in the public records, such claimant's release of such property and of all liens and security interests in such property; and (ii) on the Effective Date, all right, title and interest in such property shall revert to the Debtor, free and clear of all Claims, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind. All liens of the holders of such Claims in property of the Debtor or the Estate, discussed in the preceding sentence, unless expressly provided for to the contrary in the Plan, shall be deemed to be canceled and released as of the Effective Date.

      **(b)**    **Effect of Failure to Release Liens.** No Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder executes and delivers to the Debtor such release or other items described in this Article if required to do so. Any such holder that fails to execute and deliver such release of liens or other items described in this Article within 60 days of the Effective Date, and upon written request of the Debtor, shall be deemed to have no further Claim against the Debtor or any of its property in respect to such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property. To the extent any holder of a Claim described in subsection (a) of this Article fails to release the relevant liens as described in such subsection and in this Article, the Debtor may act as attorney-in-fact, on behalf of the holders of such liens, to provide any releases as may be required or may otherwise, in its sole judgment, seek an order of the Bankruptcy Court to secure such release, the fees for which shall be borne by such claimant.

      **9.2**    **Revesting and Vesting; Retention and Enforcement of Claims.** Except as otherwise expressly provided in the Plan, on the Effective Date, all property comprising the Estate (including any claim, right or cause of action which may be asserted by or on behalf of the Debtor), shall vest in the Debtor, free and clear of all claims, liens, charges, encumbrances and interests of creditors and Interest holders, except for the rights to Distributions afforded to holders of certain Allowed Claims under the Plan. The Debtor may use this property to settle and compromise claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

      **9.3**    **Satisfaction of Claims .** The treatment to be provided for respective Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Allowed Claims. After the Effective Date, the Debtor shall not have any liability to holders of Claims other than as provided for in the Plan.

## ARTICLE X

## EXECUTORY CONTRACTS

      **10.1**    **Executory Contracts.** Upon the Effective Date, the Debtor shall be deemed to have rejected all pre-petition executory contracts and unexpired leases, except those contracts and leases, if any, which (i) involve the lease of real property by the Debtor to tenants,

(ii) have been assumed on or prior to the Effective Date, (iii) which have already been rejected as a matter of law, or (iv) which, on the Effective Date, are subject to a pending motion to assume.

**10.2    Treatment of Rejection Damages Claims.**  Any Claim for damages based upon the rejection of any executory contract or unexpired lease shall be classified as a Class 7 Unsecured Claim and may be objected to in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  The failure to file a Claim for damages based upon the rejection of an executory contract or unexpired lease within thirty (30) days following the Effective Date shall forever bar such a Claim.

## ARTICLE XI

## ADMINISTRATIVE PROVISIONS

**11.1    Retention of Jurisdiction.**  The Bankruptcy Court shall retain post-confirmation jurisdiction over these proceedings, including, without limitation, for the following purposes:

(a)    To resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Case.

(b)    To adjudicate all claims or controversies arising out of any purchases, sales, contracts or undertakings by the Debtor during the pendency of the Chapter 11 Case.

(c)    To adjudicate any and all Claims filed by any Creditor, or other parties in interest against the Debtor or its professionals as the case may be, raised in connection with any and all post-petition Claims or causes of action arising from or related to the Case, or against the Debtor or any of its professionals with respect to the Plan.

(d)    To adjudicate all controversies and issues arising out of or relating to any adversary proceedings on the Bankruptcy Court's docket as of the Confirmation Date, or which are commenced by the Debtor after the Confirmation Date pursuant to the provisions of the Bankruptcy Code and the Plan, and including adversary proceedings in respect of any Causes of Action.

(e)    To recover all assets and properties of the Debtor, or to reform the ownership of properties of the Debtor, whether title is presently held in the name of the Debtor or a third party.

(f)    To determine the allowability, classification, or priority of Claims upon objection by the Debtor or any other party in interest entitled hereunder to file an objection (including the resolution of disputes regarding any Disputed Claims and claims for disputed Distributions), and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances.

(g)    To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to

21

enforce and execute the Plan, the Confirmation Order or any order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person.

(h)     To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate.

(i)     To determine any and all applications for allowance of Fee Claims.

(j)     To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Expense Claims or any other request for payment of Claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code.

(k)     To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, to determine any motion to reject an executory contract or unexpired lease pursuant to Article X of the Plan or to resolve any disputes relating to the appropriate cure amount or other issues related to the assumption of executory contracts or unexpired leases in the Chapter 11 Case.

(l)     To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands.

(m)     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

(n)     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code.

(o)     To determine any tax liability pursuant to section 505 of the Bankruptcy Code.

(p)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(q)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose.

(r)     To resolve any disputes concerning the release, if any, of a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder.

        (s)     To approve any Distributions, to the extent necessary, or objections thereto, under the Plan.

        (t)     To approve any Claims settlement entered into or offset exercised by the Debtor.

        (u)     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code.

        (v)     To enter a Final Order or orders closing the Chapter 11 Case.

    **11.2**    **Failure of the Bankruptcy Court to Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, then Article 11.1 hereof shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

    **11.3**    **Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law, *provided, however*, that in respect to any executory contract that shall have been assumed by the Debtor and in respect to the KeyBank Loan Documentation, the YA Global Loan Documentation and the True Value Loan Documentation, the governing law shall be as stated in such contract or documents, if applicable.

    **11.4**    **Amendments.**

        (a)    **Pre-confirmation Amendment.** Subject to the written consent of YA Global and True Value, the Debtor may modify the Plan at any time prior to the entry of the Confirmation Order, *provided, however,* that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

        (b)    **Post-confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, or in a manner that does not materially adversely affect the interests, rights, treatment or Distributions of a Class of Claims or Interests, *provided, however,* that the Debtor obtains approval of the Bankruptcy Court for such modification.

        (c)    **Post-confirmation/Pre-consummation Amendment Requiring Resolicitation.** After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially and adversely affects the interests, rights, treatment, or Distributions of a class of Claims or Interests, *provided, however,* that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification; (iii) such modification is accepted by the holders of at least two-thirds in amount, and more than one-

half in number, of Allowed Claims or Interests voting in each class affected by such modification; (iv) YA Global and True Value consent to the modification, and (v) the Debtor complies with section 1125 of the Bankruptcy Code with respect to the Plan as modified.

**11.5    Modification, Revocation or Withdrawal of the Plan.**  The Debtor reserves the right to modify or revoke and withdraw the Plan as the plan of reorganization for the Debtor at any time before the Confirmation Date or, if the Debtor is for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date.

**11.6    Exemption from Certain Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Debtor, and any deeds, bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for or allowable under section 1146(a) of the Bankruptcy Code.  For purposes of this provision of the Plan, the sale or transfer of any of the Properties, as defined above, shall be governed by this sub-section of the Plan.

**11.7    Compromise of Controversies.**  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

**11.8    Statutory Fees.**  All fees arising on or prior to the Effective Date and payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court or otherwise, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by the reorganized Debtor.

**11.9    Insurance Preservation and Proceeds.**  Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover Claims against the Estate, the Debtor or any related Person.  Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery or assist the Debtor in seeking recovery under such policies with regard to such Claims.

**11.10    Successors and Assigns.** The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**11.11    Confirmation Order and Plan Control.** To the extent that the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement and/or any other agreement entered into between the Debtors and any party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan.

**11.12    Notices.** All notices or requests in connection with the Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

> Antonucci Law Firm LLP
> David P. Antonucci, Esq.
> 12 Public Square
> Watertown, NY 13601
> (315) 788-7300

**11.13    No Admissions.** Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor or any other party with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

[SIGNATURE PAGE ATTACHED]

DATED : October    , 2010          PATRICK HACKETT HARDWARE
COMPANY

_____
Herbert Becker,
President
Hereunto duly authorized

Working Term Sheet for Multi-Party Agreement

## NON-BINDING OUTLINE

1.  Parties to the Agreement are to include:

    a)  Seaway Valley Capital Corporation and any entity related to Seaway that is obligated on the True Value Company debt and/or YA Global Investments, L.P. debt (the "Seaway Parties"), except not including Pat Hackett and Julie Hackett Cliff, and except that Patrick Hackett Hardware Company (the "Debtor") will be a third-party beneficiary, and not a signatory;

    b)  Hackett Parties consisting of Patrick Hackett, Julie Hackett Cliff, and Norm Garrelts;

    c)  YA Global Investments, L.P. ("YA");

    d)  True Value Company ("TV"); and

    e)  Thomas Scozzafava ("Scozzafava").

2.  The YA Obligations will be defined and acknowledged by the Seaway Parties and the Debtor.

3.  The TV Obligations will be defined and acknowledged by the Seaway Parties and the Debtor.

4.  TV's and YA's security interests in the assets of PHHC will be acknowledged, and the lien priority dispute will be acknowledged.

5.  The formerly pending adversary proceeding to determine lien priority which was dismissed without prejudice may be renewed at the option of either YA or TV after the occurrence of an Event of Default (defined below).

6.     The Seaway Parties, or some of them, will raise capital in an amount not less than $500,000.00 via a stock registration to fund the chapter 11 plan of the Debtor.

7.     The Seaway Parties will take all necessary steps to ensure that the Debtor files a plan and disclosure statement promptly.

8.     In the chapter 11 plan of the Debtor, the claims and security interests of YA and TV will be acknowledged and will continue upon confirmation. Notwithstanding, it will be acknowledged that, subject to the exercise of their rights after default under this agreement, neither YA nor TV will receive any distributions under the chapter 11 plan. Instead, the claims of YA and TV will be paid by or through the Seaway Parties, and the Debtor shall be a guarantor of the Seaway Parties' obligations. Both the YA Obligations and TV Obligations will have conversion features (upon terms and conditions acceptable to YA and TV in their sole and exclusive discretion) whereby some or all of their claims may, at the option of YA or TV as applicable, be converted to publically traded stock of the Seaway Parties.

9.     Forbearance:  YA and TV will agree to forbear from exercising their rights to pursue, enter and enforce a money judgment against the Debtor or with respect to the assets of the Debtor until an Event of Default occurs and is declared by either YA or TV, acting together or singly.

10.     Commencing January 1, 2011, the Seaway Parties will use best efforts to cause TV and YA each to receive not less than $50,000 per month, directly or indirectly.  In connection therewith, TV and YA will agree not to unreasonably refuse to convert portions of their respective claims to publically traded stock, subject at all times to the terms of the documents evidencing the TV Obligations and YA Obligations, and all applicable laws and regulations.

11.   YA and TV covenant and agree to reasonably cooperate with the Seaway Parties in connection with effectuating the terms of the proposed agreement.

12.   An Event of Default will occur if any of the following takes place:

   a) YA fails to receive monies of not less than $160,000, from any source intended for application to reduce the YA Obligations, in any 4 consecutive months on a rolling basis as determined at the end of each month, with the first such measuring date being March 31, 2011;

   b) TV fails to receive monies of not less than $160,000, from any source intended for application to reduce the TV Obligations, in any 4 consecutive months on a rolling basis as determined at the end of each month, with the first such measuring date being March 31, 2011;

   c) Any other breach of the proposed agreement;

   d) Patrick Hackett Hardware Company fails to confirm a plan by November 30, 2010.

13.   An Event of Default is declared by sending a written notice by method and to notice parties listed in agreement, to be effective 10 days from date of notice. Only the party issuing the notice may waive the default.

14.   YA and TV will release Pat Hackett and Julie Hackett Cliff from personal liability under their guaranties on the following conditions:

   a) Pat, Julie and Norm agree to dismiss their pending action against the Seaway Parties and Scozzafava, with prejudice;

   b) Pat, Julie and Norm each agree to accept one or more convertible debentures issued by Seaway in the aggregate face amount of $400,000 (i.e. debentures

totaling $400,000 for each Pat, Julie and Norm), bearing interest at 4% per annum, with no payments of principal or interest coming due prior to the maturity date defined as 30 days after the date that both the TV Obligations and the YA Obligations are paid in full, but commencing no later than January 31, 2014, such notes including the condition that the convertible option must be exercised unless such exercise fails to generate at least $20,000/mon each, and in such event, the notes become fully due and payable at holder's demand (subject to the subordination of such debentures to the TV Obligations and YA Obligations set forth below). The debentures will have an outside maturity date of January 31, 2019. The debentures may not be amended or modified without the express written consent of YA and TV. The debentures are expressly subordinated to TV and YA, and Pat, Julie and Norm shall not be entitled to any payments thereunder, or to take any action to enforce such debentures, until payment in full of the TV Obligations and the YA Obligations;

c) Pat, Julie and Norm surrender all other debt instruments and exchange releases with the Seaway Parties;

d) Pat and Julie and YA agree to dismiss their pending action in New Jersey and exchange limited releases;

e) Pat and Julie and TV agree to exchange limited releases;

f) While Pat and Julie dispute that they are indebted to TV and YA, for purposes of the settlement, Pat and Julie agree to resolve the dispute by acknowledging indebtedness to YA and TV in the amount of their debentures. Pat and Julie

will secure such indebtedness by collaterally assigning and pledging 50% of their Seaway debentures to YA and 50% to TV. The debentures issued to Pat and Julie pursuant to sub-paragraph (b), above, will be in such denominations as to allow an easy division between YA and TV upon the terms set forth herein. Recourse on Pat's and Julie's obligations to TV and YA, respectively, shall be limited to the debentures to be pledged by Pat and Julie to YA and TV.; and

g) YA and TV agree to exercise rights against the pledged debentures only in the event that YA or TV moves to exercise rights against the Seaway Parties or the Debtor after the occurrence of an Event of Default.

15. Thomas Scozzafava signs a personal guarantee in favor of Julie, Norm, and Pat with respect to the Seaway debentures.

16. This outline is a working draft which is for discussion purposes only and does not constitute a binding commitment with respect to any transaction or settlement, and does not create a legal obligation on the part of any party, including the obligation to consummate the transaction described herein. A binding commitment with respect to the transactions described in this outline will result only from execution of definitive transaction agreements.

DATED : October 13, 2010

PATRICK HACKETT HARDWARE
COMPANY


 /s/ Herbert Becker
Herbert Becker,
President
Hereunto duly authorized