## LIQUIDATION ANALYSIS

Debtor believes that the market value of its assets is not sufficient to satisfy all claims in full.   A balance sheet of the debtor is not necessary as the debtor's assets are fully encumbered to the secured creditors thereby indicating that in the event of liquidation no assets would be available for distribution to unsecured creditors.   The same would be especially true if the assets were liquidated.  The debtor estimates that a small percentage of the real estate value would be obtained in liquidation.  The debtor's real estate holdings do not exceed S1,000,000.00.  Present value of inventory and equipment, considering liquidation factors, would not exceed S600,000.00 and the intangible value of the debtor's good will in minimal at this juncture.   The debtor's balance sheet is attached hereto as Exhibit "C" and evidences that unsecured creditors will receive no distribution in the event of liquidation.

## THE PLAN

Although a full copy of the Plan is being transmitted with this Disclosure statement, a brief description of the Plan Classifications and treatment proposed to same follows.   The reader is referred to the plan as the same is incorporated herein by reference.

# CLASSIFICATION

The Code permits classification of claims into groups of claims with similar legal rights. Those classes and proposed treatments, for the purposes of Debtor's Plan of Reorganization, are as follows:

## CLASSIFICATION AND TREATMENT OF

## CLAIMS AND EQUITY INTERESTS.

The plan classifies and treats the creditors in the following manner

### Class 1: Priority Non-Tax Claims.

(a)     *Treatment*: Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of such Claim in full in Cash on the later of (i) the Effective Date, or (ii) as soon as practicable after the date such Claim is Allowed by a Final Order of the Bankruptcy Court. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(b)     *Status*: Class 1 is not impaired under the Plan. The holders of the Claims in Class 1 are deemed to accept the Plan and are, accordingly, not entitled to vote on the Plan.

### Class 2: Tax Municipalities Secured Claims.

(c)     *Treatment*: Each holder of an Allowed Tax Municipalities Secured Claim shall receive, at the sole option of the Debtor, (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Tax Municipalities Secured Claim is Allowed; (ii) the amount of such holder's Allowed Claim plus interest thereon at the applicable non-bankruptcy rate in equal annual cash payments of principal plus interest thereon on each anniversary of the Effective Date, until the fourth anniversary of the Effective Date (but provided, however, that the last payment shall not be later than the fifth anniversary of the Commencement Date); or (iii) such other treatment as may be agreed upon in writing by the Debtor and such holder. Notwithstanding the foregoing, the Debtor may pre-pay such a Claim at any time.

(d)     *Status*: Class 2 is impaired under the Plan. The holders of the Claims in Class 2 are, accordingly, entitled to vote on the Plan.

## Class 3: Other Secured Claims.

(e)     *Treatment*: The holders of the Allowed Other Secured Claims, if any, shall be paid the Allowed Amount of such Claim over fifteen (15) years, from month to month, from the Confirmation Date on a direct reduction, even amortization basis, inclusive of interest which shall accrue thereon at either (i) the rate of 6.5% per annum or (ii) if the holder of such claim objects to confirmation of the Plan on the basis of such rate, the Court Determined Rate. Notwithstanding the foregoing, the holder of the Allowed Other Secured Claims may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(f)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the Other Secured Claims Loan Documentation shall remain in full force and effect and any and all liens and security interests held by holders of Class 3 Claims as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(g)     The Debtor reserves the right to file pleadings pursuant to section 506(a) of the Bankruptcy Code or otherwise to determine whether or not any portion of the Claim in this Class shall be deemed to be unsecured. In the absence of filing such a pleading by the Effective Date, the entirety of the respective Other Secured Claim shall be deemed to be Secured.

(h)     *Status*: Class 3 is impaired, unless the Debtor elects to pay the holder of a Claim in this class in full under the first option above. The holders of Claims in Class 3, unless unimpaired, are, accordingly, entitled to vote on the Plan.

## Class 4: YA Global Secured Claim.

(i)     *Treatment*: The holder of the Allowed YA Global Secured Claim shall be paid and treated on a basis materially consistent with the Term Sheet attached hereto as Exhibit "D" and to be memorialized in a final written agreement (the "Final Settlement Agreement") among, and executed by, at least the parties thereto. Specifically, but without limitation, the YA Global Allowed Secured Claim shall be in the amount of its Allowed Claim, the Debtor acknowledges its obligation for the Allowed YA Global Secured Claim and the absence of any defense, offset, or reduction to such Claim, such Claim shall continue to be secured to the extent it was on the Commencement Date, such Claim shall be entitled to include reasonable legal fees and expenses of YA Global's attorneys, and YA Global shall not seek payment of its Claim from the Debtor prior to the existence of a default under the Final Settlement Agreement. YA Global shall not share in any distribution to Class 7 Creditors under the Plan.

(j)     The Debtor shall file a copy of the Final Settlement Agreement in the Bankruptcy Court not later than ten (10) days prior to the commencement of the

Confirmation Hearing, provided, however, that the Debtor reserves the right to request of the Bankruptcy Court additional time to file such agreement if circumstances so warrant. Holders of Claims or Interests may obtain a copy of such document upon written request to the Debtor in accordance with Article 11.12 of the Plan.

(k)     Except as expressly stated herein, the controversies identified in the Adversary Proceeding relating to the priority of the secured position of YA Global relative to True Value and any other secured parties shall be expressly reserved and shall not be resolved in the Plan. The Debtor acknowledges that in the event of a default under the Final Settlement Agreement, either YA Global or True Value may initiate litigation in a court of competent jurisdiction to resolve such controversies, although nothing herein shall be deemed to compel such litigation as a means of dispute resolution between the two parties.

(l)     Notwithstanding the foregoing, the holder of the Allowed YA Global Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(m)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the YA Global Loan Documentation shall remain in full force and effect and any and all liens, mortgages, and security interests held by YA Global as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(n)     *Status*: Class 4 is impaired. The holder of the Claim in Class 4 is, accordingly, entitled to vote on the Plan.

## 1.2     Class 5: True Value Secured Claim.

(a)     *Treatment*: The holder of the Allowed True Value Secured Claim shall be paid and treated on a basis materially consistent with the Term Sheet attached hereto as Exhibit "D" and to be memorialized in a final written agreement (the "Final Settlement Agreement") among, and executed by, at least the parties thereto. Specifically, but without limitation, the True Value Allowed Secured Claim shall be in the amount of its Allowed Claim, the Debtor acknowledges its obligation for the Allowed True Value Secured Claim and the absence of any defense, offset, or reduction to such Claim, such Claim shall continue to be secured to the extent it was on the Commencement Date, such Claim shall be entitled to include reasonable legal fees and expenses of True Value's attorneys, and True Value shall not seek payment of its Claim from the Debtor prior to the existence of a default under the Final Settlement Agreement. True Value shall not share in any distribution to Class 7 Creditors under the Plan.

(b)     The Debtor shall file a copy of the Final Settlement Agreement in the Bankruptcy Court not later than ten (10) days prior to the commencement of the

Confirmation Hearing, provided, however, that the Debtor reserves the right to request of the Bankruptcy Court additional time to file such agreement if circumstances so warrant. Holders of Claims or Interests may obtain a copy of such document upon written request to the Debtor in accordance with Article 11.12 of the Plan

(c)     Except as expressly stated herein, the controversies identified in the Adversary Proceeding relating to the priority of the secured position of YA Global relative to True Value and any other secured parties shall be expressly reserved and shall not be resolved in the Plan. The Debtor acknowledges that in the event of a default under the Final Settlement Agreement, either YA Global or True Value may initiate litigation in a court of competent jurisdiction to resolve such controversies, although nothing herein shall be deemed to compel such litigation as a means of dispute resolution between the two parties.

(d)     Notwithstanding the foregoing, the holder of the Allowed True Value Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(e)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the True Value Loan Documentation shall remain in full force and effect and any and all liens, mortgages, and security interests held by True Value as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(f)     *Status*: Class 5 is impaired. The holder of the Claim in Class 5 is, accordingly, entitled to vote on the Plan.

### 1.3     Class 6: KeyBank Secured Claim.

(a)     *Treatment*: The holder of the Allowed KeyBank Secured Claim shall be paid the Allowed Amount of such Claim over fifteen (15) years, from month to month, from the Confirmation Date on a direct reduction, even amortization basis, inclusive of interest which shall accrue thereon at either (i) the rate of 6.5% per annum or (ii) if the holder of such claim objects to confirmation of the Plan on the basis of such rate, the Court Determined Rate. Notwithstanding the foregoing, the holder of the Allowed KeyBank Secured Claim may receive such other, less favorable treatment as may be agreed upon by the Debtor and such holder.

(b)     Except as modified by the terms of the Plan and all reasonable inferences that may be made therefrom, the KeyBank Loan Documentation shall remain in full force and effect and any and all liens and security interests held by KeyBank as of the Commencement Date likewise shall continue in full force and effect after the Effective Date.

(c)     The Debtor reserves the right to file pleadings pursuant to section 506(a) of the Bankruptcy Code or otherwise to determine whether or not any portion of the Claim in this Class shall be deemed to be unsecured. In the absence of filing such a pleading by the Effective Date, the entirety of the KeyBank Claim shall be deemed to be Secured.

(d)     *Status*: Class 6 is impaired. The holder of the Claim in Class 6 is, accordingly, entitled to vote on the Plan.

### I.4     Class 7:  Unsecured Claims.

(a)     *Treatment*:  Each holder of an Allowed Unsecured Claim shall be paid in full and final satisfaction thereof a minimum total cash payment of five (5%) per cent (the "Minimum Payment") of the Allowed Claim and a maximum total cash payment of ten (10%) per cent of the Allowed Claim, payable as follows:

(1)     Each such holder shall share pro rata with each other holder of Allowed Class 7 Claims in $50,000 to be paid by the Debtor on the Effective Date;

(2)     Each such holder shall share pro rata with each other holder of Allowed Class 7 Claims in the Eligible Net Profits calculated annually in respect to the first ten (10) fiscal years of the reorganized Debtor following the Effective Date.

(3)     The determination of Eligible Net Profits and the payments required by this section of the Plan shall be made annually no later than one hundred and twenty (120) days following the close of the respective fiscal year.

(4)     To the extent that, following payment, if at all, of Eligible Net Profits through and including the end of the tenth such fiscal year as calculated above, the reorganized Debtor has not paid the Minimum Payment identified above, each such holder shall immediately be paid in cash a sum equal to the difference between the Minimum Payment due such holder and the total amount received by such holder to date.

(5)     Notwithstanding anything to the contrary in Section 5.7(a) of the Plan, no payments shall be made by the reorganized Debtor to Class 7 Creditors under the Plan in the event of a default under the Final Settlement Agreement

(b)     No Distributions of less than twenty ($20.00) dollars shall be made by the Debtor to the holder of any Allowed Claim in Class 7 unless a request

therefore is made in writing to the Debtor. If no request is made as provided in the preceding sentence, all such Distributions shall be held and shall be distributed to the remaining, eligible holders of Allowed Class 7 Claims, as part of the Distribution being made at the time in accordance with the terms of the Plan.

(c)     *Status*: Class 7 is impaired under the Plan. The holders of the Claims in Class 7 are, accordingly, entitled to vote on the Plan.

### Class 8: Interests

(d)     *Treatment*: Holders of Interests in the Debtor shall not receive any distribution concerning, nor retain any of their Interests in, the Debtor on account of their Interests as of the Commencement Date. All Interests in the Debtor shall be cancelled on the Effective Date.

(e)     *Status*: The Interests in Class 8 are impaired under the Plan. The holders of Interests in Class 8 are presumed to reject the Plan and are not entitled to vote on the Plan.

The plan also provides for the treatment of unclassified claims as follows:

### PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS

**Administrative Expense Claims**    All Administrative Expense Claims shall be treated as follows:

**Time for Filing Administrative Expense Claims.** The holder of an Administrative Expense Claim must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Expense Claim within sixty (60) days after Notice is given to such a putative holder by the Debtor following the Confirmation Date. Such notice must include, at a minimum, (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to file and serve this notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged, provided, however, that all Tax Municipalities shall be paid in respect to Tax Municipalities Secured Claims pursuant to Article 5.2 of the Plan.

**Allowance of Administrative Expense Claims.** An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Article 4.1(a) of the Plan shall become an Allowed Administrative Expense Claim if no objection is filed within sixty (60) days of the filing and service of notice of such Administrative Expense Claim. If an objection is filed within such sixty (60) day period, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order of the Bankruptcy Court.

19

**Payment of Allowed Administrative Expense Claims.** Each holder of an Allowed Administrative Expense Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim by the passage of time or by Final Order of the Bankruptcy Court, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; *provided however*, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business by the Debtor during the Chapter 11 Case shall be paid in the ordinary course of business by the Debtor in accordance with the terms and conditions of any agreements, express or implied, relating thereto.

**Fee Claims**   All Fee Claims shall be treated as follows:

**Time for Filing Fee Claims.** Each professional Person who holds or asserts a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive notice a Fee Application within sixty (60) days after the Confirmation Date. The failure to file and serve the Fee Application timely and properly shall result in the Fee Claim being forever barred and discharged. To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered Order of the Bankruptcy Court regarding procedures for the payment of Fee Claims.

**Allowance of Fee Claims.** A Fee Claim, with respect to which a Fee Application has been properly filed and served pursuant to Article 4.2(a) of the Plan, shall become an Allowed Fee Claim only to the extent allowed by Final Order of the Bankruptcy Court.

**Payment of Allowed Fee Claims.** Each holder of an Allowed Fee Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Fee Claim becomes an Allowed Fee Claim by the passage of time or by Final Order of the Bankruptcy Court, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder.

**Priority Tax Claims.** Each holder of an Allowed Priority Tax Claim, to the extent that it is not a Tax Municipality whose treatment is described in Article 5.2 of the Plan, shall receive, at the sole option of the Debtor, (i) the amount of such holder's Allowed Claim in one Cash payment on the Effective Date, or as soon as practicable after such Priority Tax Claim is Allowed; (ii) the amount of such holder's Allowed Claim plus interest thereon at the rate applicable under non-bankruptcy law in equal annual cash payments of principal plus interest thereon on each anniversary of the Effective Date, until the fifth anniversary of the Effective Date (but provided, however, that the last payment shall not be later than the fifth anniversary of the Commencement Date); or (iii) such other treatment as may be agreed upon in writing

by the Debtor and such holder. Notwithstanding the foregoing, the Debtor may pre-pay such a Claim at any time.

## III

## ACCEPTANCE OR REJECTION OF THE PLAN

A. Voting Classes.     Except as otherwise provided in the Plan or by order of the Court, each holder of a Claim in Classes that is not a Disputed Claim shall be entitled to vote to accept or reject the Plan, unless otherwise ordered by the Court.

B. Acceptance by Impaired Class.     An impaired class of Claims shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Code) of at least two-thirds in amount and more than one-half in number of the holders of the Allowed Claims actually voting in such class have voted to accept the Plan.

C. Nonconsensual Confirmation.     The Debtor requests that in the event any of the impaired classes reject the Plan, the Court confirm the Plan in accordance with section 1129(c) of the Code.

### A.     WHO MAY VOTE

Only classes that are impaired under the Plan are entitled to vote on acceptance or rejection of the Plan. Generally, section 1124 of the Code provides that a class of claims or interests is considered impaired unless the allowed amount of claims is paid in full upon consummation of the Plan or a plan does not alter the legal, equitable, and contractual rights of the holder of the claim or interest. Except for Class One all classes are impaired and shall be entitled to vote on the Plan.

A Creditor is entitled to vote only if either (a) its Claim has been scheduled by the

Debtor as not disputed, contingent or unliquidated, or (b) it has filed a proof of claim on or before the Bar Date set by the Court. Any Claim as to which an objection is pending is not entitled to vote unless the creditor has obtained an order of the Court temporarily allowing the Claim for the purpose of voting on the Plan. A Creditor's vote may be disregarded if the Court determines that such acceptance or rejection was not solicited or procured in accordance with the provisions of the Code.

The Failure of the Debtor to object to a Claim prior to the Confirmation Hearing, and the counting of a ballot cast by the holder of such a Claim shall not preclude or waive the right of the Debtor to object to the Claim thereafter, as otherwise provided in the Plan.

## B.    VOTING PROCEDURES

1.    Solicitation Period.

In order to be counted, a Ballot must be RECEIVED at the following address no later than 4:00 p.m. EST, on _____,2010:

> Patrick Hackett Hardware Co.
> c/o Antonucci Law Firm, LLP
> Attorneys for the Debtor
> 12 Public Square
> Watertown, New York 13601

2.    Ballots.

A Ballot is enclosed herewith for each holder of a Claim eligible to vote on the Plan, which will serve as the Ballot for indicating acceptance or rejection of the Plan pursuant to the requirements of sections 1125 and 1126 of the Code and Bankruptcy Rule 3018(c). Only Ballots with original signatures will be accepted. FAX BALLOTS WILL NOT BE ACCEPTED.

## C. CONFIRMATION OF THE PLAN

Under the Code, the following steps must be taken to confirm the Plan:

1. Confirmation Hearing.

Section 1129(a) of the Code requires the Court, after notice, to hold a hearing on confirmation of the Plan. The Court has scheduled the confirmation hearing for _____,2010 at _____a.m. in the Untied States Courthouse, 10 Broad Street, Utica, New York (the "Confirmation Hearing"). Section 1128(b) of the Code provides that any party in interest may object to confirmation of the Plan, regardless of whether such party is entitled to vote.

2. Objection to Confirmation.

The Court has directed that any objection to confirmation of the Plan must be in writing and filed with the Clerk of the Court and served upon the undersigned counsel <u>so as to be received</u> no later than 5:00 p.m. _____, 2010.. The Confirmation Hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. **UNLESS ANY OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IF ANY NOT BE CONSIDERED BY THE COURT.**

3. Requirements for Confirmation of the Plan.

At the Confirmation Hearing, the Court will determine whether the requirements

of sections 1129(a) or 1129(b) of the Code have been satisfied, in which event the Court will enter an order confirming the Plan. These requirements are as follows:

a.      Best Interests Test

Confirmation of the Plan requires that with respect to the impaired classes of Creditors, each holder of an Allowed Claim in such classes has either accepted the Plan or will receive under the Plan prorate of a value, as to the Effective Date, that is not less than the amount the holder would receive if the Debtor were liquidated under Chapter 7 of the Code. The Debtor must submit that it has satisfied the "best interest test" for the reasons discussed above. Notably, as a result of continuing its business as a going concern, the general unsecured creditors will receive proceeds from Debtor's future income. Under Chapter 7 liquidation, there would be no such future income and the real estate would be disposed of to satisfy only secured creditors and real property tax claims.

b.      Feasibility of the Plan

In order for the Plan to be confirmed, the Court must determine that it is feasible; that as a practical matter the Debtor has sufficient resources to meet its obligations under the Plan on a timely based on cash flow projections.

c.      Acceptance by Impaired Classes.

Section 1129(a)(8) of the Code generally requires that each impaired class must accept the Plan by the requisite votes for confirmation to occur. A class of impaired Claims will have accepted the Plan if a least two-thirds in amount and more than one-half in number of Allowed Claims actually voting in the class, and voting upon the plan, have accepted it. A class of Equity Interests will have accept the Plan if the holders of at least

two-thirds in amount of such Equity Interests who vote have accepted it. In the event any class of Claims or Equity Interest that is impaired under the Plan fails to accept the Plan by the minimum percent of votes, except as described below, the Debtor may seek either to modify the Plan or to confirm the Plan pursuant to the provision of section 1129(b) of the Code.

                d.      Fair and Equitable Test

       The Court must determine at the Confirmation Hearing whether the Plan is firm and equitable and does not discriminate unfairly against impaired dissenting class of Claims.

       With respect to an Unsecured Claim, "fair and equitable" means either (a) the impaired unsecured creditor receives property of a value equal to the amount of its claim or (b) the holders of claims of the dissenting class will not receive any property under the Plan. Under the Plan, the holders of claims and interests that are junior to Class 11 will not receive any distribution.

       With respect to the class of Equity Interest, "fair and equitable" means either (a) each holder of an interest of such class receives or retains on account of such interest property of a value, equal to the greater of the allowed amount of nay fixed liquidation preference to which such holder is entitled or the value of such interest; or (b) the holder of any interest that is junior to the interest of such class will not receive or retain any property on account of such junior interest. Under the Plan, the holders of Equity Interest are deemed to have rejected the Plan under section 1126(g) of the Code. Accordingly, Debtor intends to confirm the Plan with respect to the Equity Interest under section

1129(b)(2)(C) of the Code.   Notably, no equity holders exist in this case.

Based upon the distributions to be made to holders of Allowed Claims under the Plan, Debtor submits that the Plan is fair and equitable.

IV

## MEANS OF IMPLEMENTATION

## OF THE PLAN

**General Funding**.  Subsequent to the Effective Date, the Debtor shall operate its business and, without the obligation to do so, take any and all prudent steps to provide for the payment of Creditors under the Plan, including, without limitation, the following: (a) selling all or some of the Properties, including hiring real estate brokers or similar professionals to dispose of Estate Assets in such a way, and at such a price, as to enable the Debtor to realize fair market value therefore and to pay any Secured Debt thereon; (b) refinancing any of the loans to holders of Secured Debt, thereby enabling such holders to be paid in full and, as appropriate enabling the Debtor to pay Unsecured Claims;  and (c) entering into partnership or joint venture agreements to maximize the value of Estate Assets, and, to the extent possible, to pay off or pay down any Secured Debt relating to the subject of such a partnership or joint venture.

**New Value Contribution**.  On or before the Effective Date, the New Value Contributors shall make the New Value Contribution in exchange for 100% of the Interests in the reorganized Debtor. The New Value Contributors shall be those Persons described in the definition Article of the Plan unless, prior to the Confirmation Hearing, written notice is received by the Debtor's counsel appearing on the face sheet of the Plan

26

that another party or parties desires to bid for the Interests in the reorganized Debtor accompanied by a cashier's or certified check, payable to the Debtor, in the sum of the bid. In such event, the Debtor will seek authorization from the Bankruptcy Court to set up an expedited process for accepting bids and selecting a winning bid for the Interests in the reorganized Debtor.

**Preservation of Assets and Claims.** All right, title and interest in and to the Estate Assets shall remain with the Debtor.

### Liquidation of Assets out of the Ordinary Course.

Irrespective of the pendency of any complaint or motion to do so prior to the Confirmation Date, on and after the Confirmation Date the Debtor shall not sell or otherwise attempt to dispose of any Estate Assets out of the ordinary course of business that constitute collateral of YA Global or True Value unless the respective lienholder or lienholders consent in writing and receive the proceeds of such sale net of the direct expenses of the sale but without further application of section 506(c) of the Bankruptcy Code, which net proceeds shall be applied by them to their respective indebtedness.

**Prosecution of Debtor's Claims Against Third Parties.** The Debtor may file adversary complaints to pursue avoidance claims and any other Causes of Action against Creditors of the Debtor and against other third parties to the extent not settled or resolved prior to the Confirmation Date or in accordance with the Plan, provided, however, that the Debtor shall not file any such complaints or other Causes of

Action against YA Global or True Value, and acknowledges that no such claims or causes of action exist.

**Section 506(a) Litigation.**

As necessary, but subject to the Plan, the Debtor shall initiate pleadings pursuant to section 506(a) of the Bankruptcy Code to determine to what extent, if at all, an Allowed Claim of a Creditor is secured by property of the Debtor or is otherwise to be treated solely as an unsecured Claim in this case.

**Conditions Precedent to the Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

All payments to be made on or before the Effective Date by the Debtor shall be made or duly provided for.

The New Value Contributors shall have made the New Value Contribution to the Debtor.

The Bankruptcy Court shall have entered the Confirmation Order in form and substance consistent with the Plan, which Confirmation Order shall be acceptable to the Debtor, and shall have become a Final Order.

The Final Settlement Agreement (i) shall have been prepared and executed by all parties to the Term Sheet and any others appearing on the Final

28

Settlement Agreement, and (ii) any and all actions required or contemplated by the Final Settlement Agreement shall have been taken by each of the parties responsible for so doing.

**Effect of Nonoccurrence of the Conditions to Consummation.** If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the date that is 90 days after the Confirmation Date, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor or (b) prejudice in any manner the rights of the Debtor.

## V.

## DISTRIBUTIONS

**Distributions** The Debtor shall be responsible for making Distributions to holders of Allowed Claims pursuant to Article V of the Plan. The Debtor shall only be required to make Distributions on a Distribution Date.

**Disputed Claims** In making Distributions, the Debtor shall reserve an amount sufficient to make a Distribution based on the filed amount of the Disputed Claims unless otherwise ordered by the Bankruptcy Court. The Debtor shall reserve such amount until such time as any such Disputed Claim becomes an Allowed Claim or is disallowed. Once a Claim becomes an Allowed Claim in whole, or in part, the Cash then due to the holder of the Allowed Claim shall be distributed to the claimant on the

next Distribution Date.  To the extent a Claim is allowed in an amount less than the amount that had been reserved, the unused portion shall no longer be reserved.

### Unclaimed Property.

(a)    **Escrow of Unclaimed Property.**  The Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.

(b)    **Distribution of Unclaimed Property.**  Notwithstanding Article 7.3(a) of the Plan, at the end of one hundred twenty (120) days following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims theretofore entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, whereupon (i) all right, title and interest in and to such property shall immediately and irrevocably revest in the Debtor, (ii) such holders shall cease to be entitled thereto, and (iii) any such Unclaimed Property shall be, among other things, subject to Distribution by the Debtor to any Allowed Claims that remain unpaid, either in whole or in part, in accordance with Article V of the Plan.

### Distributions to Holders of Claims Generally.

(a)    **No Distribution in Excess of Allowed Amount of Claim.**  Except as expressly provided for in the Plan or by operation of law under the Bankruptcy Code, (i) no holder of an Allowed Claim shall receive in respect of such Claim any Distribution

in excess of the Allowed Amount of such Claim and (ii) no Claim shall be Allowed to the extent that it is for post-petition or post-Effective Date interest.

(b) **Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(c) **Withholding Taxes.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

(d) **Timing of Distributions Under the Plan.** Payments and Distributions in respect of Allowed Claims under the Plan shall be made as mandated under the Plan.

(e) **Manner of Payments.** Any payments to be made by the Debtor pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtor or its professionals (or by wire transfer if circumstances justify), at the option of the Debtor.

**Setoffs.** Except as otherwise provided in the Plan, the Confirmation Order, or in agreements approved by Final Order of the Bankruptcy Court, the Debtor

may, pursuant to applicable law (including section 553 of the Bankruptcy Code), offset against any Distribution amount related to any Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such, *provided, however*, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of the Plan shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder. To the extent the Debtor fails to set off against a Creditor and seeks to collect a claim from such Creditor after a Distribution to such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery on the claim against such Creditor.

## **Plan Expenses and Plan Expense Reserve.**

All costs, expenses and obligations incurred by the Debtor in administering the Estate Assets or in any manner connected, incidental or related thereto, including but not limited to the fees and expenses of professionals retained by the Debtor and their respective professionals to assist in carrying out their post-confirmation duties pursuant to the Plan, post-confirmation U.S. Trustee's fees, and fees and expenses of the Debtor and their respective professionals in pursuing ongoing litigation, shall be a charge against the Estate Assets, and the Debtor shall pay the same, maintaining at all times adequate reserves for such payments prior to making Distributions to the Creditors, all subject to any agreement in respect thereto between the Debtor and the party involved.

# VI

## EXECUTORY CONTRACTS AND

## UNEXPIRED LEASES.

Except as thereafter provided, the Debtor hereby rejects each of the outstanding executory contracts and unexpired leases under which it was obligated or to which it was a party as of the Petition Date except as noted above.

# VI

## TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtor and holders of Claims and Equity Interests. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rulings and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. Legislative, Judicial or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state or local or other tax law, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as taxpayers who are not U.S. domestic corporations or citizens or residents of the United States, S corporations, banks, mutual funds, insurance companies, financial

institutions, regulated investment companies, broker-dealers and tax-exempt organizations).

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE APPLICABLE TAX LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPTION OF COUNSEL HAD BEEN REQUESTED OR OBTAINED FROM THE IRS WITH RESPECT THERETO. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

Generally, the federal income tax consequences of the Plan to a creditor will depend upon several factors, but not limited to: (I) whether the Creditor's Claim (or portion thereof) constitutes a Claim for principal or interest;(ii) the type of consideration received by the Creditor in exchange for the Claim; (iii) whether the Creditor is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); (iv) whether the Creditor has taken a bad debt deduction or worthless security deduction with respect to his Claim and (v) whether the Creditor

receives distributions under the Plan in more than one (1) taxable year. CREDITORS ARE STRONGLY URGED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.

Creditors Receipt of Cash. Creditors receiving solely cash in exchange for the Claims will generally recognize taxable gain or loss in an amount equal to the difference between the amount realized and each such Creditor's adjusted tax basis in the Claim. The amount realized will equal the amount of cash (or, in the case of marketable securities, the fair market value of such securities) to the extent that such consideration is no allocable to any portion of the Claim representing accrued and unpaid interest.

The character of any recognized gain or loss(i.e. ordinary income, or short term or long term capital gain or loss) will depend upon the status of the Creditor, the nature of the Claim in the Creditor's hands, the purpose and circumstances of its acquisition, the Creditor's holding period of the Claim, and the extent to which the Creditor previously claimed a deduction for the worthlessness of all or a portion of the claim.

A loss generally is treated as sustained in the taxable year for which there has been a closed and complete transition, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

Coeditors should consult with their own tax advisors as to the matters discussed in this section concerning character and timing of recognition of gain or loss. Because a loss will be allowed as a deduction only for the taxable year in which the loss was sustained, a Creditor that claims a loss in the wrong taxable year risks denial of such loss altogether. In the case of certain categories of Claims, consideration should be given to the possible availability of a bad debt deduction under section 166 of the

Tax Code for a period prior to the Effective Date. In addition, a portion of any distributions received after the Effective Date may be taxed as ordinary income under the imputed interest rule.

Receipt of Interest. A portion of the consideration received by a Creditor in satisfaction of a Claim may be allocated to the portion of such Claim (if any) that represents accrued but unpaid interest. If any portion of the distribution were required to be allocated to accrued interest, such portion would be taxable to the Coeditor as interest income, except to the extent the creditor has previously reported such interest as income.

In the event that a creditor has previously reported the interest income, only the balance of the distribution after the allocation of proceeds to accrued interest would be considered received by the Creditor in respect of the principal amount of the Claim. Such an allocation would reduce the amount of the gain, or increase the amount of the loss, realized by the Creditor with respect to the Claim. If such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital loses may be deducted against ordinary income).

To the extent that any portion of the distribution is treated as interest, Creditors may be required to provide certain tax information in order to avoid the withholding of taxes. CREDITORS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL INCOME TAX TREATMENT OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS. The foregoing is intended to be a summary only and not a substitute for consultation with a tax professional. The federal, state, local and foreign tax consequences of the Plan are complex and in, some respects, uncertain. Such consequences may also vary based upon the individual circumstances of each holder of a Claim or Equity Interest. Accordingly, each holder of a Claim or Equity Interest is strongly

urged to consult with its own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

VII

## RISK FACTORS

Distributions to creditors contemplated to be made under the Plan are contingent upon many assumptions, some or all of which could prove to be invalid and preclude the Plan from becoming effective or reduced the anticipated distribution to creditors.

The Plan is subject to approval by various classes of creditors entitled to vote under the Code and ultimate confirmation of the Plan by the Court. No assurances can be provided that creditors will vote in favor of the Plan or that the Court will approve the same.

Debtor will remain in business. Debtor believes that the reorganization of its debt as projected cash flow will result in sufficient profit to make payments provided by the Plan. However, in the event that Debtor unable to either make the improvements necessary to lease additional units or is unable to find tenants to lease property, Debtor could default on its obligations under the Plan.

VIII

## PROPERTY TO BE RETAINED OR SURRENDERED

Except as expressly provided in the Plan or Order confirming Plan, the Debtor shall retain all property of the bankruptcy estate as of the Effective Date, whether tangible or intangible, scheduled or unscheduled, choate or inchoate, whosesoever located, which property shall vest in the Debtor free and clear of all claims and interests of creditors pursuant to Code Section 1141.

IX

## CONFIRMATION STANDARDS

Debtor believes that the provisions of the proposed Plan of Reorganization comply with the mandatory requirements set forth under Code Section 1129(a)(1) through (a)(13). With respect to the provisions of Code Section 1129(a)(8) and 1129(a)(10), Debtor believes that at least one class f impaired claims will vote to accept the Debtor's Plan. Therefore, Debtor believes that the requirements of acceptance of each class of claims set forth in Bankruptcy Code Section 1129(a)(8) may be subject to cram-down provisions set forth in Bankruptcy Code Section 1129(b).

**In the event Debtor is required to proceed to confirmation by cram-down in accordance with the Local Rules of the Court, Debtor believes that cram-down will be approved on that the liquidation analysis establishes the Debtor's compliance with the liquidation standards for cram-down and the proposed income for the purpose of debt repayment under the circumstances. The Debtor specifically incorporates all Exhibits attached. The Debtor also incorporates herein by reference all Monthly Operating Reports filed with the Office of the United States Bankruptcy Court Clerk for the Northern District of New York during the pendency of this proceeding. attempt to bifurcate claims status pursuant to Bankruptcy Code Section 506.**

# X.

## ADMINISTRATIVE PROVISIONS

**Retention of Jurisdiction.**  The Bankruptcy Court shall retain post-confirmation jurisdiction over these proceedings, including, without limitation, for the following purposes:

1.     To resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Case.

2.     To adjudicate all claims or controversies arising out of any purchases, sales, contracts or undertakings by the Debtor during the pendency of the Chapter 11 Case.

3.     To adjudicate any and all Claims filed by any Creditor, or other parties in interest against the Debtor or its professionals as the case may be, raised in connection with any and all post-petition Claims or causes of action arising from or related to the Case, or against the Debtor or any of its professionals with respect to the Plan.

4.     To adjudicate all controversies and issues arising out of or relating to any adversary proceedings on the Bankruptcy Court's docket as of the Confirmation Date, or which are commenced by the Debtor after the Confirmation

Date pursuant to the provisions of the Bankruptcy Code and the Plan, and including adversary proceedings in respect of any Causes of Action.

5. To recover all assets and properties of the Debtor, or to reform the ownership of properties of the Debtor, whether title is presently held in the name of the Debtor or a third party.

6. To determine the allowability, classification, or priority of Claims upon objection by the Debtor or any other party in interest entitled hereunder to file an objection (including the resolution of disputes regarding any Disputed Claims and claims for disputed Distributions), and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances.

7. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order or any order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person.

8.     To protect the property of the Estate from claims against, or

interference with, such property, including actions to quiet or otherwise clear title to

such property or to resolve any dispute concerning liens, security interest or

encumbrances on any property of the Estate.

9.     To determine any and all applications for allowance of Fee

Claims.

10.     To determine any Priority Tax Claims, Priority Non-Tax

Claims, Administrative Expense Claims or any other request for payment of Claims or

expenses entitled to priority under section 507(a) of the Bankruptcy Code.

11.     To determine any and all motions related to the rejection,

assumption or assignment of executory contracts or unexpired leases, to determine any

motion to reject an executory contract or unexpired lease pursuant to Article X of the

Plan or to resolve any disputes relating to the appropriate cure amount or other issues

related to the assumption of executory contracts or unexpired leases in the Chapter 11

Case.

12.     To determine all applications, motions, adversary proceedings,

contested matters, actions, and any other litigated matters instituted in and prior to the

closing of the Chapter 11 Case, including any remands.

13.    To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

14.    To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code.

15.    To determine any tax liability pursuant to section 505 of the Bankruptcy Code.

16.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

17.    To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any applicable Claims bar date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose.

18.    To resolve any disputes concerning the release, if any, of a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder.