| UNITED STATES BANKRUPTCY COURT | Hearing Date: December 9, 2010 |
| NORTHERN DISTRICT OF NEW YORK | Hearing Time: 10:30 a.m. |
| | Hearing Location: Utica, New York |

-----------------------------------------------------------

In re:

**PATRICK HACKETT HARDWARE COMPANY,**   Case No. 09-63135
                                        Chapter 11

                    Debtor.
-----------------------------------------------------------

## UNITED STATES TRUSTEE'S MOTION TO CONVERT THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 1112(b)

TO THE HONORABLE DIANE DAVIS, UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 2 ("United States Trustee"), in furtherance of her duties and responsibilities set forth in 28 U.S.C. § 586(a)(3),(5), does hereby make application to this Court for an order converting the case of Patrick Hackett Hardware Company ("Debtor") from a chapter 11 case to a chapter 7 case, pursuant to 11 U.S.C. § 1112(b). In support of the relief requested, the United States Trustee represents and alleges as follows:

## BACKGROUND AND PROCEDURAL HISTORY

1.  The Debtor commenced this case by filing a voluntary petition under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") on November 10, 2009.

2.  With the petition, the Debtor filed Schedules "D," "E," and "F," together with the Debtor's corporate resolution, authorizing the bankruptcy filing.

3.  On November 10, 2009, the Court Clerk issued a deficiency notice to the Debtor, which stated that the following documents were required to be filed on or before November 25, 2009:

(a) Disclosure of Attorney Compensation, required by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure;

(b) List of Equity Security Holders;

(c) Schedules "A" through "C" and Schedules "G" through "J;"

(d) Statement of Financial Affairs;

(e) Statistical Summary;

(f) Summary of Schedules; and

(g) Affidavit Pursuant to Local Rule 2015-6.

4. On November 24, 2009, the Debtor filed a motion requesting an extension of the deadline to file the deficient Schedules, Statement of Financial Affairs and other required bankruptcy documents ("Motion to Extend Deadline"). The Debtor sought to extend the deadline to January 10, 2010. However, the Debtor improperly noticed the hearing on the Motion to Extend Deadline, and it was not heard by the Court until January 20, 2010. The United States Trustee objected to the extension requested by the Debtor and, at the hearing held on January 20, 2010, the Court denied the Motion to Extend Deadline.

5. The first meeting of creditors, pursuant to 11 U.S.C. § 341 ("341 Meeting") was held on December 15, 2009 and thereafter adjourned to January 22, 2010 due to the Debtor's failure to file outstanding documents.

6. On January 26, 2010, the United States Trustee filed a motion to convert this case from one under Chapter 11 to one under Chapter 7 for cause pursuant to 11 U.S.C. §1112(b)(4)(E),(F),(G) & (H).

7. On the same date, the Debtor filed the missing documents listed under (a) through (f) in paragraph 3 above. It did not file the Statement pursuant to Local Rule 2015-6 until March 8, 2010.

8. On February 4, 2010, proposed counsel for the Debtor, David P. Antonucci ("Antonucci") submitted his application to be employed as Counsel to the Debtor. On February 12, 2010, the United States Trustee objected, in part, to Antonucci's retention and requested further clarification.

9. On March 23, 2010, after a hearing, the Court granted Antonucci's application to be employed as Counsel. Despite having over six months to submit an Order, Antonucci failed to submit the appropriate Order approving his Application to Employ. Consequently, on September 20, 2010, the Court vacated its oral order of March 23, 2010, citing Antonucci's failure to submit a proposed order or to timely request an extension by which to submit same.

10. To date, Antonucci has failed to resubmit an Application for Appointment as Debtor's counsel, and therefore, the Debtor remains unrepresented.

11. On June 10, 2010, the Court issued an Order to Appear and Show Cause as to why the case should not be dismissed or converted for failure to file a Disclosure Statement or a Plan of Reorganization to be heard on June 22, 2010.

12. On June 21, 2010, the Debtor filed its first Disclosure Statement and Plan of Reorganization. On the same day, the United States Trustee withdrew her motion for conversion or dismissal and the hearing on the Order to Show Cause was not held.

13. On July 16, 2010, Key Bank objected to the Disclosure Statement.

14. On August 2, 2010, the Official Committee of Unsecured Creditors (the "Committee") objected to the Disclosure Statement citing an inability to be confirmed and a lack of adequate information.

15. On August 3, 2010, the United States Trustee joined the Committee, in

part, and filed an Objection to the Disclosure Statement, citing inadequate information, lack of disclosure, and unclear payment terms. Additionally, the United States Trustee submitted that the Disclosure Statement contained an improper liquidation analysis and substandard financial projections.

16. A hearing was held on the Disclosure Statement on August 12, 2010. Antonucci indicated that he would amend the Disclosure Statement and Plan based upon the objections filed thereto. To accommodate this request, the Court set a date for a special hearing to be held on September 22, 2010. However, the Debtor failed to meet the agreed upon deadlines in filing the appropriate amendments and the hearing was adjourned to November 10, 2010.

17. On September 30, 2010 the Debtor filed a Motion to Sell real property, pursuant to 11 U.S.C. §363(b), to which the United States Trustee opposes as set forth in more detail in the United States Trustee's Opposition (*See* Docket Number 193).

18. Thereafter, on October 13, 2010, the Debtor filed an Amended Disclosure Statement and Amended Plan. The United States Trustee submits that the Amended Disclosure Statement should not be approved for the reasons set forth in her Objection (*See* Docket Number 194).

19. Additionally, the last operating report filed by the Debtor was for the period of May 2010. Currently, the Debtor has failed to file operating reports for June, July, August, and September 2010.

20. In addition to prohibiting the United States Trustee, the Court and other parties-in- interest from effectively monitoring the case, the failure to file operating reports has also prevented the United States Trustee from accurately calculating the

amount of quarterly fees that are owed, pursuant to 28 U.S.C. § 1930.

## APPLICABLE AUTHORITY

21. Under 11 U.S.C. § 307, the United States Trustee has standing to be heard on any issue, in any bankruptcy case or proceeding.

22. Pursuant to 28 U.S.C. § 586 (a)(3), the United States Trustee is charged with the duty of supervising the administration of cases in chapter 11.

23. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157.

24. 28 U.S.C. § 586(a)(8) states that "in any case in which the United States trustee finds material grounds for relief under section 1112 of title 11, the United States trustee shall apply promptly after making that finding to the court for relief."

25. Conversion of chapter 11 cases is governed by 11 U.S.C. § 1112(b). Section 1112(b) states in relevant part as follows:

> (1) Except as provided in paragraph (2) of this subsection…….on request of a party in interest….absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that –
>
>   (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in section 1121(e) and 1129(e) of this title….; and
>
>   (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
>
>     (i) for which there exists a reasonable justification for the act or omission; and

>>> (ii) that will be cured within a reasonable period of time fixed by the court

>> . . .

>> (4) For purposes of this subsection, the term "cause" includes [in relevant part]-

>> . . .

>>> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation

>>> (E) failure to comply with an order of the court;

>>> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

26.     Stated differently, with limited exceptions, § 1112(b) mandates that the court dismiss or convert a Chapter 11 case where any of the acts or omissions identified in § 1112(b)(4) exist. "Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)." *In re TCR of Denver, LLC,* 338 B.R. 494, 498 (Bankr. D. Colo. 2006); *See In re Veltmann*, No. 11-07-11370 MR, 2007 WL 4191736, *3 (Bankr. D.N.M. November 21, 2007) ("once sufficient cause has been demonstrated, dismissal or conversion is mandatory").

27.     There are only two exceptions to mandatory conversion or dismissal. The first is found in § 1112(b)(1), and it restores the court's discretion over dismissal or conversion in cases involving "unusual circumstances specifically identified by the court." The second exception is found in § 1112(b)(2), and it operates to enable a debtor to avoid dismissal or conversion where "reasonable justification" exists for the

deficiencies in the case, those deficiencies "will be cured within a reasonable period of time," and there is a reasonable likelihood that the debtor will confirm a plan. However, this second exception is inapplicable if cause exists under § 1112(b)(4)(A).

## ARGUMENT

### POINT I

### THE DEBTOR MAY NOT PROCEED UNDER CHAPTER 11 WITHOUT THE ASSISTANCE OF COUNSEL

28. Rule 9010-3 of the Local Rules of Bankruptcy Procedure for the Northern District of New York provides that "[a] debtor corporation shall not be permitted to file a petition or proceed under Chapter[s]…11…without representation by an attorney duly admitted to the Northern District of New York."

29. Since the Court vacated its oral order of September 20, 2010 approving the Debtor's retention as counsel for the Debtor, Antonucci has failed to resubmit proper application for employment as counsel for the Debtor. Therefore, the Debtor remains under the protection of Chapter 11 without the assistance of counsel and in violation of Local Rule 9013-3.

### POINT II

### CONVERSION OR DISMISSAL IS WARRANTED PURSUANT TO 11 U.S.C. § 1112(b)(4)(A)

30. Cause for conversion or dismissal of a debtor's Chapter 11 case may be grounded in a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." pursuant to 11 U.S.C. §1112(b)(4)(A).

31. The language of § 1112(b)(4)(A) is nearly identical to the pre-BAPCPA language in § 1112(b)(1), which referred to "continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation." *See In re Gateway Access Solutions, Inc.* 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). Consequently, the analyses employed prior to the enactment of the BAPCPA, with regard to 11 U.S.C. § 1112(b)(1), remain relevant when considering a motion to dismiss or convert based on 11 U.S.C. § 1112(b)(4)(A). *See Id.*

32. Courts have held that a negative cash flow, incurred post-petition and an inability to pay current expenses, constitute a loss to or diminution of the estate. *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (citations omitted); *In re Motel Properties, Inc.*, 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004).

33. In the *AdBrite* case, the Court emphasized that a determination whether there is a continuing loss to or diminution of the estate should be based on a full evaluation of the present condition of the estate. "While in some instances a Debtor showing a short term period of loss can overcome a pattern of unprofitability, the Debtor should not continue to suffer losses beyond the point where reorganization is no longer realistic". *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003).

34. The analysis requires a temporal review. At the early stages of a case, to prove an absence of a reasonable rehabilitation, the movant must prove more than a "hopeless and unrealistic prospect" of rehabilitation. *See AdBrite*, at 251 (citing *In re Economy Cab & Tool Co., Inc*. 44 B.R. 721, 724 (Bankr. D. Minn. 1984)).

35. However, the instant case is far beyond its "early stages". Here, it is clear that the Debtor has been unable to make any material change in its profitability

since case inception almost one year ago. To the contrary, the Debtor continues to suffer losses. On the basis of the operating report submitted for December 2009, the Debtor showed a net loss of ($11,176,577.91). Based on the May 2010 operating report, the United States Trustee notes that the Debtor posted a net loss of ($891,621.53). The loss reflected in the May 2010 operating report represents factual support that the Debtor has an ongoing systemic failure in its business operations.

36. Upon information and belief, the Debtor closed three of its retail outlets in Massena, Potsdam & Canton, New York, leaving its Ogdensburg store and its internet site as the only remaining retail outlets. Because the Debtor has not filed any recent operating reports, it is impossible to determine how much of the Debtor's losses have been attributable to the operations of those particular locations.

37. The Debtors financial position has deteriorated significantly since filing. For example, on December 31, 2009, Debtor showed a balance of cash and equivalents of approximately $251,344. Five months later, this number had declined by _89.5%_ to $26,247.

38. Based on the foregoing, the United States Trustee estimates that the Debtor is likely to incur a net loss from operations of ($2,140,000) for 2010, notwithstanding the closure of all but one of its retail locations.

39. The United States Trustee submits that the Debtor has been "financing" its 2010 net operating loss through a combination of: (1) a reduction of its cash position; (2) a reduction in the amount of its overall inventory and (3) borrowing from its ultimate parent corporation, Seaway Valley Capital Corporation ("SVCC").

40. According to the Debtor, its pre-petition liabilities as of October 31, 2009,

totaled $20,594,589.

41. Based on the information submitted by the Debtor, total liabilities have increased to $22,463,697 through August 2010; a net increase of 9.07% since the filing of the case.

42. Therefore, and on the basis of the net losses from operations, coupled with the marked increase in post petition liabilities, the Debtor has no realistic ability to repay any of the pre-petition liabilities and therefore has no ability to propose a viable plan.

43. The second prong of §1112(b)(2)(A) requires a showing of the "absence of a reasonable likelihood of rehabilitation." The United States Trustee submits that the Debtor's current financial position and continued losses coupled with the type of industry in which it operates, the presence of strong well capitalized and aggressive competition in that market and the size of the market all combine to make any possibility of rehabilitation unlikely.

44. Because a Chapter 11 plan of reorganization may include liquidation, the test under §1112(b)(4)(A) is not whether the debtor can confirm a plan, but, rather, "whether the debtor's business prospects justify continuance of the reorganization effort... Thus, rehabilitation requires, "at minimum, the prospect of re-establishing a business." *In re Vallambrosa Holdings,* 419 B.R. 81 at 88 (Bkrtcy S.D. Ga. 2009).

45. Finally, when a debtor proposes to reorganize through a continuation of its business, as opposed to liquidation, the court must concern itself with whether the "debtor has formulated, or can formulate within a reasonable amount of time, a reasonably detailed business plan." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2010 quoted *In re Quail Farm, LLC* Slip

Copy 2010 WL 1849867, (Bkrtcy. N.D.W.Va. 2010).

46. The Debtor's losses continue through August 2010. According to the Debtor's most recently provided financial records, the Debtor has incurred a monthly net loss of ($116,746.80) and a year to date net loss of $1.1 Million (through August 2010). Although this number has not been substantiated in the filing of a formal operating report, the information was submitted by the Debtor for review by the United States Trustee.

47. Actual figures show that the Debtor's gross revenue for August was $58,290 (55% lower than projected) and that the Debtor produced a net loss of $(116,746) for a difference of over 100% from the Debtor's projections provided in the amended disclosure statement. Debtor's own projections forecast a profit margin of 50% to 56%. Specifically, in the August projections, the Debtor anticipated a 53% profit margin; however, the Debtor, in reality, achieved a paltry *3.73%* margin.

48. Although the Debtor has been in Chapter 11 for almost a year, there has been minimal improvement. Despite the closing of its stores, and injections of capital from the shareholder, the Debtor has been unable to significantly overcome many financial obstacles. The Debtor faces formidable barriers to "re-entry" into the market with the prevalence of other well capitalized competitors.

49. In the context of §1112(b), rehabilitation means to "put back in good condition and reestablish a sound basis". *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). Clearly, in the instant case, there is no realistic chance of "putting back" this Debtor where the Debtor has been consistently unable to make a profit or even meet ongoing expenses.

50. The Debtor's Amended Plan and Amended Disclosure Statement offer nothing to alter the fact that the Debtor's reorganization has little likelihood of success. In its basic form, the Amended Plan proposes an infusion of capital through a public stock offering. Although the Amended Plan better articulates the terms of reorganization, the proposal, notwithstanding the amendments, remains highly implausible, especially in light of the continuing decline in Debtor's revenue and asset base.

51. The United States Trustee submits that since the losses are ongoing and are not due to "unusual circumstances," pursuant to 11 U.S.C. §1112(b)(1), the Debtor does not have any ability to confirm a plan,; and therefore, the exception under 1112(b)(2) does not apply.

52. Therefore, on the basis of the foregoing, the United States Trustee submits that cause exists, pursuant to 11 U.S.C. 1112(b)(4)(A), and that this case should be converted, or in the alternative dismissed.

## POINT III

### CONVERSION OR DISMISSAL IS WARRANTED PURSUANT TO 11 U.S.C. § 1112(b)(4)(E)

53. Pursuant to 11 U.S.C. § 1112(b)(4)(E), cause for conversion or dismissal of a debtor's Chapter 11 case may be grounded in a "failure to comply with an order of the Court." On November 16, 2009, this court entered an Order directing duties of Debtor in Possession (the "Order"). Among the directives in the Court's November 16th Order was that the debtor shall file with the Court and with the Office of the United States Trustee monthly statements of its operations and financial condition.

54. As stated in Paragraph 19, the Debtor has failed to file operating reports

for the months of June, July, August, and September, 2010.

55. For this reason, Debtor has failed to comply with this Court's order of November 16, 2009 and by its non compliance cause exists to convert this case to one under Chapter 7 of this title or in the alternative to dismiss it.

**POINT IV**

**CONVERSION OR DISMISSAL IS WARRANTED PURSUANT TO
11 U.S.C. § 1112(b)(4)(F)**

56. Pursuant to 11 U.S.C. § 1112(b)(4)(F), cause for conversion exists based on a debtor's "unexcused failure to satisfy *timely* any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." (Emphasis added) *See In re Stinson Petroleum Co., Inc.*, No. No. 09-51663-NPO, 2009 WL 5108396, *2 (Bankr. S.D. Miss. Dec. 16, 2009) (citing failure to timely file monthly operating reports as additional grounds for conversion); *In re Tucker*, 411 B.R. 530, 535 (Bankr. S.D. Ga. 2009) (stating that "operating reports and the financial disclosures accompanying them are the life-blood of the Chapter 11 process" and that they "are the means by which creditors can monitor debtor's post-petition operations and as such, are an important obligation of a debtor-in-possession") (quoting *In re 210 West Liberty Holdings, LLC*, 2009 WL 1522047, at *7 (Bankr. N.D. W. Va. May 29, 2009));

57. Operating reports are due by the 20th day of the month following the period that is being reported.

58. The failure to timely file operating reports deprives the United States Trustee, the court and other parties in interest the opportunity to properly analyze the status of the case; to correctly compute the fees due under to 28 U.S.C. § 1930(a)(6) and

violates the United States Trustee guidelines and procedures for Chapter 11 debtors.

59. Therefore, cause exists to convert this case pursuant to 11 U.S.C. § 1112(b)(4)(F).

**WHEREFORE**, the United States Trustee respectfully requests that the Court enter an order converting this chapter 11 case to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b) or in the alternative dismissing it pursuant to Local Rule 9010-3, together with such other and further relief as may be deemed just and proper.

Dated: November 2, 2010
      Utica, New York

Respectfully submitted,

**TRACY HOPE DAVIS**
**UNITED STATES TRUSTEE FOR**
**REGION 2**

    */s/ Erin P. Champion*
**ERIN P. CHAMPION**
**TRIAL ATTORNEY**
**10 Broad Street**
**Suite 105**
**Utica, New York 13501**
**Tel: No. (315) 793-8191**
**Fax: No. (315) 793-8133**