COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036
Tel. (212) 479-6000
Fax. (212) 479-6275
Lawrence C. Gottlieb (LG 2565)
Jay R. Indyke (JI 0353)
Brent Weisenberg (BW 7107)

Counsel for the Official Committee of Unsecured
 Creditors of Patrick Hackett Hardware Company

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

In re:

PATRICK HACKETT HARDWARE COMPANY,

                       Debtor.

------------------------------------------------------------ X

**Hearing Date:**  November 10, 2010

**Hearing Time:**  1:00 p.m.

**Hearing Place:**  Utica

Chapter 11

Case No. 09-63135-6

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO THE DEBTOR'S AMENDED DISCLOSURE STATEMENT**

The Official Committee of Unsecured Creditors (the "Committee") of Patrick

Hackett Hardware Company (the "Debtor"), by and through its counsel, Cooley LLP, files this

objection (the "Objection") to the amended disclosure statement (the "Amended Disclosure

Statement") for the Debtor's amended plan of reorganization (the "Amended Plan") filed on

October 13, 2010, and in support of its Objection, the Committee respectfully represents:

**I.**

**PRELIMINARY STATEMENT**

While the Debtor's Amended Disclosure Statement includes slightly more

detailed information with respect to the how the Amended Plan will be funded and how creditors will be treated, the Amended Disclosure Statement and Amended Plan fail to cure the fatal deficiencies of the Debtor's original plan and disclosure statement to which the Committee and the United States Trustee objected.[1]  Pursuant to the Amended Plan and Amended Disclosure Statement, the Debtor proposes a 5% to 10% payment to general unsecured creditors over a defined ten-year period, but all payments to unsecured creditors are contingent on a panoply of factors over which the Debtor has little or no control and that unsecured creditors are unable to analyze.  Most significantly, the Debtor will not be required to make any payments to unsecured creditors in the event of a default under the Final Settlement Agreement (as that term is defined in the Amended Plan), a document which has not been filed or produced for the Committee's review.  Accordingly, it is impossible for any unsecured creditor to evaluate the treatment of its claim under the Amended Plan.

Further, in contrast to the de minimis, contingent distribution proposed for general unsecured creditors, the Debtor proposes to have its parent, Seaway Valley Capital Corporation (the "Parent"), pay the Debtor's secured creditors in full over time.  As with its original plan, the Debtor intends to accomplish the repayment of the secured creditors and funding of the other requirements of the Amended Plan through a public stock offering and working capital generated by the Debtor's operations.  While the Amended Disclosure Statement now contains an explanation of how the Debtor plans to accomplish its proposed capital raise, this explanation serves only to highlight how tenuous the Debtor's prospects of obtaining funding through a public offering actually are.   Further, the revised projections for income and expenses included in the Amended Disclosure Statement, show that the Debtor will operate at a loss for the first six

---

[1]     On August 2, 2010, the Committee filed an objection (Doc. No. 167) to the Debtor's disclosure statement. On August 3, 2010, the United States Trustee filed an objection (Doc. No. 169) to the Debtor's disclosure statement.

months of every year for the first several years for which projections are provided. What is more, these projections, although inadequate to provide any assurance to creditors that the Debtor will be able to consummate the Amended Plan, are substantially more optimistic than those produced with the original disclosure statement.

The Amended Disclosure Statement, like the original, fails to provide "adequate information" as required by section 1125 of the Bankruptcy Code. The Debtor's Amended Disclosure Statement lacks critical information with respect to several key elements of the Amended Plan that are essential to creditors' understanding and consideration thereof. Among other glaring omissions, the Disclosure Statement fails to:

- adequately explain to creditors that the feasibility of the Amended Plan is premised on the Parent obtaining financing through a highly speculative public stock offering;

- explain (i) the likelihood of the Parent's ability to obtain such financing and (ii) how creditors will be treated under the Amended Plan if such financing is not obtained;

- include comprehensible, credible financial projections which would allow creditors to assess whether the Debtor will be able to operate profitably upon exiting bankruptcy and satisfy its obligations to creditors which span somewhere between seven to thirty years into the future

- clearly set forth all of the various contingencies that must occur in order for unsecured creditors to receive any payment at all under the Amended Plan; and

- clearly explain how general unsecured creditors will be treated under the Amended Plan in the event of a default under the Final Settlement Agreement.

Because of these deficiencies, unsecured creditors reviewing the Amended Disclosure Statement cannot make a reasoned judgment about whether to accept or reject the Amended Plan. The Amended Disclosure Statement thus violates section 1125 of the Bankruptcy Code and should not be approved.

While the Committee recognizes that the upcoming hearing is one on adequacy of

the Amended Disclosure Statement, there are many courts that will not allow a disclosure statement to be approved if the plan is patently unconfirmable.  Here, the Amended Disclosure Statement (like the Debtor's original disclosure statement) should not be approved because the Amended Plan, which was <u>not</u> negotiated with the Committee and which the Committee does <u>not</u> support, is so fundamentally flawed that it cannot be confirmed.  As set forth below, because the Amended Plan is not feasible and does not comply with the requirements of the Bankruptcy Code, this estate should not waste precious resources soliciting votes for and seeking confirmation of an Amended Plan that is patently unconfirmable and has no reasonable likelihood of being consummated.

In light of the foregoing, and for the reasons more fully set forth below, it is respectfully submitted that the Debtor's Amended Disclosure Statement not be approved.

## II.

## <u>OBJECTION</u>

### A.   <u>THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION</u>

1.   The Debtor's obligation under the Bankruptcy Code to make full and fair disclosure in its Amended Disclosure Statement is a prime requirement of the law.  <u>In re Momentum Mfg. Corp.</u>, 25 F.3d 1132, 1136 (2d Cir. 1994).  Solicitation of acceptances or rejections of a plan of reorganization is prohibited under section 1125(b) of the Bankruptcy Code unless such solicitation is accompanied by a disclosure statement approved by the Court as containing "adequate information."  <u>See</u> 11 U.S.C. § 1125(b); <u>see also</u> <u>Kirk v. Texaco Inc.</u>, 82 B.R. 678, 681 (S.D.N.Y. 1988) ("Under § 1125(b) of the Bankruptcy code, a disclosure statement concerning a plan may not be distributed for consideration unless the supervising bankruptcy judge is satisfied that the statement contains 'adequate information' . . . .").

2.     Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan;. . . .

11 U.S.C. § 1125(a)(1).

3.     While what constitutes adequate information is to be determined on a case-specific basis, " … the Chapter 11's size and complexity, the kind of plan proposed and the kind of claims or interests it impairs and the access by these impaired holders to relevant information from other sources serve as a starting point in the evaluation of the adequacy of disclosures." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988). Disclosure statements must provide sufficient information to support the assertions contained therein; bare assertions, without information or documentation, are insufficient. See In re Weiss-Wolf, Inc., 59 B.R. 653, 656 (Bankr. S.D.N.Y. 1986) ("[I]t is not enough for a debtor to say, in effect, trust me, this is a good deal for creditors"). Furthermore, unsupported opinions do not constitute "adequate information." See In re Egan, 33 B.R. 672, 675 (Bankr. N.D. III 1983); In re East Redley Corp., 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982).

4.     The Debtor's Amended Disclosure Statement does not afford creditors the detailed factual information they need to make an informed decision whether to accept or reject the Amended Plan. Indeed, the lack of adequate information lies at the very heart of the Amended Plan: how and when will the Debtor pay the guaranteed de minimis distribution to creditors? While the Amended Plan and Amended Disclosure Statement attempt to supply more information than the original plan and disclosure statement, all payments to creditors are fully

subject to multiple contingencies.  One such contingency is the lack of default under the Final Settlement Agreement, a document which has not been produced or filed.  Without this and other information, creditors do not have the requisite detail they need to make informed decisions on the Amended Plan.

5.     The Debtor should be required to disclose all "factors known to the [debtor] that bear upon the success or failure of the proposals contained in the plan."  <u>In re Stanley Hotel, Inc.</u>, 13 B.R. 926, 929 (Bankr. D.Colo. 1981); <u>In re Prudential Energy Co.</u>, 59 B.R. 765, 768 (Bankr. S.D.N.Y. 1987) (Creditors are entitled to all material facts that will enable them to make an informed judgment).  As set forth below, the Debtor has failed to disclose all known factors that bear upon the economic treatment of unsecured creditors; hence, the Amended Disclosure Statement should not be approved.

6.      Specifically, the Amended Disclosure Statement fails to provide adequate information about, among other things, such fundamental matters as:

(i)     the inherent risks associated with the Parent's intent to raise the necessary funds to finance the Plan through one or more public stock offerings, and the prospects for the Parent being able to do so in a timely manner;

(ii)    how the Debtor / Parent will fund the Amended Plan if claims are allowed in amounts that exceed the Debtor's projections, which projections themselves were not disclosed;

(iii)   The terms and conditions of the Final Settlement Agreement, which if breached would result in no payment to holders of general unsecured creditors; and

(iv)     concise financial projections that would allow unsecured creditors to assess the

likelihood of the Debtor operating profitability upon its exit from bankruptcy and

timely paying unsecured creditors a distribution over the next ten years.

Indeed, the Amended Disclosure Statement (and Amended Plan) is silent as to the ramifications

of the Debtor being unable to adequately fund the Amended Plan.

7.     In the Amended Disclosure Statement, the Debtor quizzically asserts that the

"[t]here are no indicated [sic] based upon either the financial condition of [Parent] and its

affiliates, or the market in general, that would cause [Parent] to conclude that it will not be able

to raise the necessary funding."  Amended Disclosure Statement, p. 10.  This mere speculation

that Parent will find investors willing to inject capital into a company that has, by its own

admission, "not been profitable," (See Amended Disclosure Statement, page 10) is insufficient

evidence that the Debtor will be able to fund the Amended Plan.  Further, although the Debtor

has now filed motions to sell certain real property in an effort to generate working capital,

creditors remain unable to assign a value to this property in order to assess whether its sale

would enable the Debtor to consummate its Amended Plan because of the potential lease-back

costs the will result from the proposed sale and the Debtor's failure to disclose whether this

property is encumbered.

8.     Finally, the absolute priority rule as codified in section 1129(b)(2)(B)(ii) bars a

debtor's equity holder from receiving value in the reorganized debtor "on account of" its prior

interests in the Debtor when senior creditors are not paid in full.  See  11 U.S.C. §

1129(b)(2)(B)(ii).  Under the proposed Amended Plan, however, the Debtor's equity holder will

retain ownership of the reorganized Debtor and the Amended Disclosure Statement fails to

adequately explain to creditors how the Debtor's equity holder can do so without violating the

absolute priority rule. While the Committee is cognizant of the so-called "new value" exception to the absolute priority rule, the Amended Disclosure Statement fails to adequately explain this exception to creditors, and more importantly, to demonstrate whether the Amended Plan meets the requirements of case law interpreting the "new value" exception.

9.      Absent additional information, creditors cannot make an informed decision as to whether to accept or reject the Amended Plan, and, therefore, the Amended Disclosure Statement should not be approved. "In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. This disclosure statement fails this test." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

**B.      THE AMENDED DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE AMENDED PLAN CANNOT BE CONFIRMED**

10.      Even if the Amended Disclosure Statement is revised to remedy all of the defects set forth above, the Amended Disclosure Statement should not be approved because the Amended Plan is so fundamentally flawed that it is unconfirmable as a matter of law.

11.      If a court can determine from a reading of a proposed plan that it does not comply with the Bankruptcy Code, "then it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate." In re Pecht, 53 B.R. 768, 768-69 (Bankr. E.D. Va. 1985); see also Olive Street Investments, 117 B.R. at 492 (disclosure statement should not be approved where "[t]here is not a reasonable possibility that the Debtor can submit a feasible Plan of Reorganization."); In re Mahoney Hawkes, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) ("[I]t is permissible … for the Court to pass upon confirmation issues where, as here, it is contended that the plan is so fatally flawed that confirmation is impossible.") (citations omitted).

12.     In fact, the Court has an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the Amended Plan because "[a]llowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation." In re Dakota Rail, Inc., 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (citations omitted). Moreover, "[s]ubmitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless venture would be costly and it would delay any possibility of a successful reorganization." In re Copy Crafters Quickprint, Inc., 92 B.R. at 980.

13.     The Debtor's proposed Amended Plan is patently unconfirmable because the Debtor has not satisfied the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code, which requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) requires that "[i]n determining whether a plan is feasible, the bankruptcy court has an obligation to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." United Properties, Inc. v. Emporium Department Stores, Inc., 379 F.2d 55, 64 (8th Cir. 1967).

14.     The Debtor's Amended Plan fails to provide the Court with sufficient information to determine whether the plan is feasible. The proposed Amended Plan contemplates funding by the Parent, whose sole means of providing such financing is through a speculative public stock offering. The Debtor has provided zero evidence of the Parent's ability to capitalize the Debtor or fund operations going forward absent a successful offering, nor has it provided any indication of how the Debtor might correct the flaws in the business that brought it into bankruptcy. Correcting those flaws is vital given that the Debtor proposes to pay its creditors for an

indeterminate time into the future; somewhere between the next seven to thirty years. Manufactured long-term projections without any apparent basis are insufficient. Accordingly, there is no evidence that the Debtor will not be insolvent the day after the Amended Plan is confirmed, or that the Parent will not direct the Debtor to simply liquidate shortly after confirmation if the Debtor's sales do not meet its expectations or the Parent cannot raise the needed funds. As such, the Amended Plan fails to satisfy section 1129(a)(11) of the Bankruptcy Code.

15.     In order to comply with § 1129(a)(11), the "debtor must offer more than speculation about the source of funding for the plan." In re Briscoe Enters., Ltd., 138 B.R. 795, 807 (N.D. Tex. 1992). The Eight Circuit Court of Appeals has declared that the "feasibility test is firmly rooted in predictions based on objective fact." In re Clarkson, 767 F.2d 417, 420 (8th Cir. 1985). The Clarkson court elaborated on this standard, noting that "the feasibility test contemplates 'the probability of actual performance of the provisions of the plan. Sincerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." Id. (quoting In re Bergman, 585 F.2d 1171, 1179 (2nd Cir. 1978)).

16.     The Debtor's Amended Plan, funded almost exclusively by the proceeds of the Parent's contemplated public stock offering, is utterly devoid of any evidence to satisfy this standard. In failing to provide adequate information about the financial condition of the Parent and its ability to raise the needed funds, the Debtor has offered nothing but speculation about the source of funding for the Amended Plan. Indeed, neither the Committee nor the Court has been provided the information necessary to determine that the Amended Plan will not be followed by

a liquidation or further financial reorganization of the Debtor's business, as is required by §

1129(a)(11).  Moreover, the Amended Plan is unconfirmable in several other important respects:

- Because the Debtor lacks sufficient financing, and it may only be able to raise funding from public offerings after many months due to regulatory issues, it is likely to be unable to pay administrative and priority claims on the effective date of the Amended Plan, in contravention of sections 1123(a)(5) of the Bankruptcy Code;

- The Amended Plan likewise violates sections 1123(a)(5) of the Bankruptcy Code because it does not provide for adequate means for its implementation;

- The Amended Plan was unanimously rejected by the Committee and will <u>not</u> be accepted by unsecured creditors as drafted because not only is it in violation of the absolute priority rule but it provides a speculative and contingent 5%-10% distribution over the course of ten years; and

- To the extent that the Debtor seeks to have the Amended Plan approved under the Bankruptcy Code's "cramdown provisions," the Amended Plan violates the absolute priority rule with respect to unsecured creditors by distributing property to equity holders on account of their interest in the Debtor, as it allows the existing equity holders to retain their shares in the Debtor for inadequate consideration absent any market test while unsecured creditors are receiving only their pro rata share of $50,000 on the Effective Date with the possibility of up to 10% of the face value of their claims over a ten-year period – all of which distributions are CONTINGENT on various undisclosed factors.

17.     Based on the forgoing, the Committee is unanimous in its vehement rejection of

the proposed Amended Plan, and it is unlikely that any well-informed unsecured creditor would

vote differently.  In any event, if this Court is inclined to approve the Amended Disclosure

Statement over the Committee's objection, the Committee respectfully requests that the

following be added to the Amended Disclosure Statement:

> "THIS AMENDED DISCLOSURE STATEMENT AND THE AMENDED PLAN WERE DRAFTED AND FILED WITHOUT CONSULTATION WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "<u>COMMITTEE</u>").  THE COMMITTEE HAS REVIEWED THE AMENDED PLAN AND HAS UNANIMOUSLY VOTED TO REJECT THE AMENDED PLAN.  THE COMMITTEE RECOMMENDS THAT GENERAL UNSECURED CREDITORS LIKEWISE VOTE TO REJECT THE AMENDED PLAN."

18.     In order to enable the Committee to effectively communicate its position regarding the Amended Plan to its constituency, the Committee also requests that it be allowed to include a letter in the solicitation materials which clearly sets forth its position on the Amended Plan.  Such letter will actually have the effect of conserving expense for the estate because otherwise the Committee would be forced to mail the letter in a separate package at additional cost to the estate.  Further, the unsecured creditors are certainly entitled to the benefit of the views of their statutory representative.

**WHEREFORE**, the Committee respectfully requests that the Court:  (i) deny the Amended Disclosure Statement; or (ii) modify the Amended Disclosure Statement to include a statement, drafted by the Committee, voicing the Committee's disapproval of the Amended Plan; and (iii) grant such other relief as is just and proper.

Dated: New York, NY
      November 3, 2010

COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000
Lawrence C. Gottlieb (LG 2565)
Brent Weisenberg (BW 7107)

By:   /s/ Jay R. Indyke
       Jay R. Indyke (JI 0353)

       Counsel for the Official Committee of Unsecured
       Creditors of Patrick Hackett Hardware Company